UNITED STATES, Appellee

v

DONALD R. NICHOLS, Captain,
U. S. Army, Appellant

8 USCMA 119, 23 CMR 343

121

No. 9114

Decided July 12, 1957

*Captain John F. Christensen* argued the cause for Appellant, Accused.

*First Lieutenant Edward S. Nelson* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton* and *First Lieutenant John E. Riecker.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

Before entering a plea of not guilty, the accused moved to dismiss the charges against him. He contended that he had been deprived of his right to counsel during the formal investigation held pursuant to Article 32, Uniform Code of Military Justice, 10 USC § 832. The motion was denied by the law officer, and the correctness of his ruling is one of the issues presented for review.

The accused was an agent in the Counter Intelligence Corps. Several of the offenses charged related to purported improper dealings with subordinates and misuse of the field office to which he was assigned. As a result, the initial investigation was conducted by other Counter Intelligence agents. The information collected and the charge sheets were classified as "confidential." The accused was informed of the charges against him on October 27, 1955. He retained civilian counsel. This lawyer had been a former national president of the Counter Intelligence Corps Association and was at the time a member of the Board of Governors of the organization. On two separate occasions the accused requested the convening authority to permit his civilian counsel to attend the proposed Article 32 investigation. Both requests were denied on the ground that the charges and the investigative file compiled by the Counter Intelligence

agents were classified, and the accused's counsel was not "cleared" for access to such matter. In part, the second denial, which is dated November 14, 1955, reads as follows:

"1. With reference to request contained in basic communication, it will be noted that the investigative file and the charge sheets are classified. Therefore, Regulations forbid the premature disclosure of the material contained therein. Inasmuch as the investigation required by Article 32, Uniform Code of Military Justice, is not judicial in nature, disclosure of such material at such a hearing to unauthorized persons is prohibited."

Other correspondence in the record of the pretrial proceedings shows that in accordance with a request by the convening authority, dated October 24, 1955, the Commanding General, Second Army, on November 9, 1955, ruled that with "the exception of paragraph 2b, basic communication [which referred to a charge alleging misuse of a Government vehicle, expected to be established by the testimony of a Captain G. E. Franks], and that portion of the charge sheet pertaining to Captain Glenn E. Franks as a witness, all other information contained in this correspondence may be considered as unclassified," and that with the exception of Captain Franks "all other witnesses as listed

on the charge sheet have been cleared to testify in open court." It would seem that this communication should have settled the question of classification and required, at least, a limited grant of the accused's request. However, explanation of the convening authority's denial appears in one of his indorsements to the basic communication. Dated November 25, 1955, this indorsement refers to information received by the convening authority's Staff Judge Advocate from the commanding officer of the Counter Intelligence Corps regional office to the effect that the declassification action of November 9 "did not mean what it said." The indorsement does not indicate when the Staff Judge Advocate received this information. It merely notes that the Counter Intelligence Corps commanding officer received a telephone call from an undisclosed person at Second Army Headquarters "on or about 12 November 1955." From the fact that the accused's request was denied, it can be assumed that the convening authority was apprised of it before November 14, the date he denied the accused's second application.

The latest denial also advised the accused that the pretrial investigation would be held on November 21, 1955, and that his civilian counsel would be permitted to attend only if he was officially cleared for access to the classified matter. On November 15, the convening authority was asked to initiate security clearance for the accused's counsel. The request was denied on November 16 with the comment that the "burden" of obtaining clearance was not on the military. It was further remarked that it would be "presumptive on the part of this command . . . to request clearance on a private citizen concerning whom . . . [it] has no official interest or connection." That same day, civilian counsel applied to the Chief of the Counter Intelligence Corps at Fort Holabird, Maryland, for clearance. On November 18 this officer wrote to the convening authority advising him that as far as his office was concerned there was "no objection" to civilian counsel representing the accused, but that counsel would have to meet the security standards of the local command. Nevertheless, the convening authority adhered to his determination that civilian counsel would not be allowed to be present during the Article 32 investigation. The assistant trial counsel explained his purpose as follows:

". . . Now, the problem which faced the convening authority in the preparation of this case was simply this; since security matter was involved which was going to have to be disclosed or which was very likely to have to be disclosed if a trial resulted, that was a matter which could not be avoided. In other words, if the case went to trial, there was no way to avoid having a certain amount of disclosure to civilian counsel. However, if the case did not go to trial or if the Article 32 investigation revealed that the case should not be tried, then there would be no need to compromise classified information and for that reason the accused was not permitted the individual counsel at the Article 32 investigation."

Military counsel was appointed to represent the accused. Acting "on orders," he and the accused appeared on November 21, 1955, before the investigating officer. No witnesses were called, and the only evidence considered by the investigating officer was the file prepared by the Counter Intelligence Corps, which was still classified. Appointed military counsel only "looked at" the statements in the file. The next day, the investigating officer submitted his report recommending trial by general court-martial.

On November 25, by the indorsement which we have already mentioned, the convening authority requested from the Commanding General, Second Army, "clarification" of the November 9th action which had declassified virtually all of the information in the investigative file. An expeditious reply was asked because the charges were ready for reference to trial, and the accused had *civilian counsel standing ready to defend him and who so far has not been permitted access to any of the information surrounding the charges.*" On De-

cember 7, 1955, Second Army again declassified the file. This declassification was substantially the same as that of November 9th.

At the trial civilian defense counsel moved to dismiss the charges on the ground that the accused's substantial rights in the Article 32 investigation had been violated. He argued that he had been deprived of the opportunity to cross-examine the witnesses and to determine whether they could be contradicted or impeached. As a consequence, he had been effectively precluded from preparing adequately for the accused's defense.[1] Most of the proceedings were reviewed by the law officer, and several of the letters were introduced in evidence. At the conclusion of the hearing, he denied the motion.

By express provision of law, the failure to comply with, or a substantial departure from, the requirements of the pretrial hearing does not deprive the court-martial of jurisdiction. Article 32, Uniform Code of Military Justice, 10 USC § 832. Consequently, the accused's description of his motion as a motion to dismiss is inaccurate. However, mere misstatement of the nature of the relief sought does not justify the denial of a motion. Rather, it must be decided according to its substance. United States v Gravitt, 5 USCMA 249, 17 CMR 249. The substance of the motion here is that the accused was deprived of his right to counsel. This right is specifically granted to him by Article 32. Hence, if the evidence supported his contention, he was entitled to a new investigation. United States v Allen, 5 USCMA 626, 18 CMR 250. In other words, the denial of a substantial right in the pretrial hearing will not deprive the court-martial of the power to proceed to findings and sentence, but in a particular case it can require appropriate relief, or even the reversal of his conviction. United States v Parker, 6 USCMA 75, 19 CMR 201; United States v Schuller, 5 USCMA 101, 17 CMR 101. See also,

United States v McMahan, 6 USCMA 709, 21 CMR 31.

An Article 32 investigation is not a mere formality. Rather, the pretrial hearing is an integral part of the court-martial proceedings. United States v Allen, supra. Its judicial character is made manifest by the fact that testimony taken at the hearing can be used at the trial if the witness becomes unavailable. United States v Eggers, 3 USCMA 191, 11 CMR 191.

Unquestionably the accused's civilian counsel was prevented from representing him at the pretrial investigation. Under normal circumstances this action would require the law officer to grant the accused's motion to the extent of ordering a new investigation. However, the Government contends that the burden was upon the accused to obtain security clearance for his counsel within "a reasonable time after fair warning had been given him regarding the date of the investigation." It may be questioned whether five days, including a week-end, constitute a reasonable time. It may also be questioned whether there was any real need for clearance.

The convening authority had been notified as early as November 9 that virtually all the information and all the witnesses listed on the charge sheet, except Captain Franks, could be "considered unclassified." True, the convening authority later learned, in a circuitous way, that this clearance indorsement seemingly did not "mean what it said." But since this information apparently came to his attention before he denied the accused's request, it would have been more considerate of him to obtain clarification of the clearance ruling before he acted. However, our problem is not what might have been accomplished, but what was, in fact, done. The more pointed question then is whether civilian counsel, chosen by an accused to defend him in a court-martial case, has the duty of obtaining security clearance before he can appear

_____

1. Defense counsel also contended that after declassification he had not been provided with a copy of one of the statements in the file. A copy was given to him at that time. Since no issue is raised in regard to this deficiency, we need make no further mention of it.

in the pretrial hearing on behalf of the accused.

An accused has the right to be represented at his own expense by "civilian counsel" instead of by appointed military counsel. Articles 32, 70, Uniform Code of Military Justice, 10 USC §§ 832, 870; Manual for Courts-Martial, United States, 1951, paragraphs 34*d*, 48*a*. We presume that Congress could require civilian counsel to meet certain qualifications before being authorized to practice before courts-martial. However, no explicit qualifications have been prescribed. Accordingly, in practice, the accused has been free to choose his counsel from the members of the bar of every state in the United States, and from the bar of the Federal courts. In foreign countries he has even been represented by members of the local bar. See United States v Sears, 6 USCMA 661, 20 CMR 377. Recognizing the problems that such an unrestricted choice can present in the preliminary stages of a security case, one student of military law has suggested that, after a hearing on the question, civilian counsel can be barred from court-martial practice on the ground that he is a security risk. Feld, A Manual of Courts-Martial Practice and Appeal, § 158(b) (1957). Assuming the validity of such proceedings, it would appear that the burden is on the Government to prove that civilian counsel is disqualified, rather than upon counsel to establish his qualification. See Manual for Courts-Martial, supra, paragraph 32, page 61. We think this is the correct rule. Since the accused's civilian counsel had not been barred from practice before courts-martial, it was error to exclude him from the pretrial investigation.

It is arguable that if exclusion of counsel is not permitted, except as a result of a disbarment proceeding, an accused's choice of questionable counsel can inordinately delay the proceedings against him. The answer to that argument was given by the United States Court of Appeals for the Second Circuit in a closely related situation. In United States v Andolschek, 142 F2d 503 (1944), the trial judge refused to permit defense counsel access to certain records because he believed disclosure of their contents was prohibited by Treasury Department regulations. Criticizing this rule, Judge Learned Hand, writing for a unanimous court, said:

". . . While we must accept it as lawful for a department of the government to suppress documents, even when they will help determine controversies between third persons, we cannot agree that this should include their suppression in a criminal prosecution, founded upon those very dealings to which the documents relate, and whose criminality they will, or may, tend to exculpate. So far as they directly touch the criminal dealings, the prosecution necessarily ends any confidential character the documents may possess; it must be conducted in the open, and will lay bare their subject matter. The government must choose; either it must leave the transactions in the obscurity from which a trial will draw them, or it must expose them fully."

See also Jencks v United States, 353 US —, 1 L ed 2d 1103, 77 S Ct —; Coplon v United States, 185 F2d 629 (CA2d Cir) (1950).

For the purposes of this case, we need not consider whether the trial proceedings can be closed to the public for reasons of national security. See United States v Brown, 8 USCMA 18, 23 CMR 242. We do hold, however, that the Uniform Code imposes no qualifications upon a civilian lawyer's right to practice in courts-martial. As a result, the accused's right to a civilian attorney of his own choice cannot be limited by a service-imposed obligation to obtain clearance for access to service classified matter. To paraphrase the Court of Appeals for the Second Circuit, the burden of choice rests upon the Government. It can permit the accused to be defended by his own lawyer, or it can defer further proceedings against him, or it can, for proper cause, disbar the lawyer presented by the accused from practice before courts-martial. Cf. Manual for Courts-Martial, supra,

paragraph 33*f*, page 41. Having determined to proceed with the pretrial investigation, the convening authority was bound to permit the accused's civilian counsel to be present.

Left for consideration is the Government's contention that the accused ■ waived his right to have his civilian counsel present. Of course, the right to counsel at the pretrial hearing is personal and can be waived. United States v Rhoden, 1 USCMA 193, 2 CMR 99. The circumstances of this case, however, "require us to look with a jaundiced eye toward the claim that the accused waived his right." United States v McMahan, supra, page 718.

Everything that the accused did points to his desire to have his own ■ civilian counsel represent him at the pretrial investigation. He submitted two requests for permission for his presence, and he detailed substantial facts indicating that his counsel was qualified for security clearance. Unknown to him, and while his request was pending before the convening authority, Headquarters, Second Army, declassified almost all of the investigative matter. The convening authority knew of this declassification, but on the basis of a secondhand report, he disregarded it, and denied the accused's request. At the same time he insisted that the pretrial investigation proceed on November 21. From these, and other facts which we have set out earlier, it clearly appears the accused did not establish a true attorney-client relationship with military counsel who was appointed to represent him in the pretrial hearing. See United States v Miller, 7 USCMA 23, 21 CMR 149. Consequently, we are unable to charge the accused with a knowing and deliberate election to forgo his civilian counsel's assistance at the Article 32 investigation. United States v Richardson, 1 USCMA 558, 4 CMR 150.

The decision of the board of review is reversed. The findings of guilty and the sentence are set aside. The record of trial is returned to The Judge Advocate General of the Army for reference to the convening authority who, in his discretion, may dismiss the' charges or order another investigation in accordance with the requirements of Article 32, United States v Clisson, 5 USCMA 277, 17 CMR 277, and take such other proceedings, including a rehearing, as may be justified by the investigating officer's report and the evidence.

Judge FERGUSON concurs.

LATIMER, Judge (concurring in the result):

I concur in the result.

I concur in the result but, because there are several unsound principles of law announced by my associates, I prefer to record my opposition to their becoming part of military law. An extended discussion is not necessary as a short reference will highlight my three areas of departure.

First, I would not require the Government to assume the burden of obtaining security clearance ■ for counsel. To place responsibility there is similar to requiring a sovereign state or the Government to assume the task of qualifying lawyers for admission to practice in their courts. In my view, clearance in those few instances when classified materials must be used imposes reciprocal obligations on the parties, but the duty to move first and carry the major portion of the load falls on counsel. Obviously he cannot rule on his own application and, once he has initiated the proceedings and furnished the required data, the responsibility to carry on is squarely on the back of the Government, as is the duty to notify counsel when clearance has been granted or denied. However, as a condition precedent to the performance of the Government's obligation, the lawyer must collect, compile, and furnish the Government with the information upon which to base a decision. Once counsel has done that, he can do little more, for the power to control the ultimate decision is vested in the Government and it should subordinate the time of hearing to the time of clearing counsel to appear. In the event defense counsel

refuses to initiate a request with its information base, or becomes adamant, dilatory, or otherwise seeks to delay the judicial processes, the Government should be permitted to proceed.

Second, I disagree with the concept that restrictions reasonably calculated to protect classified information ▆▆▆▆▆▆ cannot be imposed by the military services. In military forums, and perhaps in civilian courts, if secret information must be disclosed in the proceedings, the Government has the right to impose reasonable regulations to prevent the possibility of disloyal persons obtaining classified information involving national security under the guise of representing an accused. In Jencks v United States, 353 US —, decided June 3, 1957, the Supreme Court affirmed the principle that the protection of vital national interests may militate against public disclosure of documents in the Government's possession. It is no answer to say that the Government can abandon its prosecution, for the choice of one opposed to our form of Government as an advocate in a case involving the national welfare is not an acceptable method of defeating prosecution. Nothing any Federal court has said, so far as I know, impinges on that principle, and the quotation from United States v Andolschek, 142 F2d 503 (1944), found in the Court's opinion, does not touch remotely on this subject. In keeping the rights of the Government in balance with those of an accused, it just appears to me that there are sufficient lawyers in this country who can meet the required security tests that an accused will not be denied a substantial right if he is limited to that class. Obviously my arguments on this phase of the controversy are in the abstract and have nothing to do with counsel in this case. The lawyer selected was an honored member of the bar, a reserve officer who had been president of the Counter Intelligence Corps Association. He readily met all security requirements and was, in fact, given a security clearance.

Third, I approach the question of waiver from a different viewpoint than my associates. Defense counsel was in a field in which he was ▆▆▆▆▆▆ eminently qualified. He knew confidential information would be disclosed and that a security clearance was necessary. As a matter of fact, he had initiated the necessary papers, albeit he procrastinated for a short period. He had ample warning of the time of hearing, yet he failed to appear. When that time arrived and information on clearance had not been received, he was not present and his associated military counsel failed to move for a continuance. Ordinarily, if an attorney fails to appear at the appointed time and place for hearing, or to have someone there with instructions to protect his rights, it requires a strong showing to relieve him from default. There is a positive duty placed upon counsel to be present in person when a trial is scheduled unless other prior arrangements have been made and, in this instance, a telephone call would have sufficed, for military counsel was available and he could have presented a motion for continuance based on the delay in clearance. However, defense counsel was not alone to blame as the Government took a cavalier view of his right to represent the accused and its agents acted arbitrarily in the treatment of the request for clearance. The convening authority seems to have adopted an attitude that when he set the time for the pretrial hearing, defense counsel was obligated to either have clearance or be disqualified. Of course, that is a capricious method of operation, particularly when his headquarters had some responsibility to assist counsel in qualifying.

Perhaps the most important factor militating against waiver arises from the following: This pretrial hearing seems to have been carried on in a peculiar sort of manner. Although I must confess the record leaves me somewhat uncertain, if I correctly understand the method of operation used, because the crime involved a member of the Counter Intelligence Corps and the identity of its operators must be kept undisclosed, the pretrial hearing consisted of an officer of the Corps collecting affidavits of other members and

other witnesses. The statements were then assembled, and those which had been declassified were offered to military defense counsel for his inspection. That appears to have been the pretrial hearing. If I am correct in that conclusion, then I fail to see any advantage of civilian counsel being present at the hearing, for the witnesses would not have been available for cross-examination. One of the cardinal principles underlying the holding of a pretrial hearing is to afford the accused that privilege prior to the time he must stand trial. Sending a Government agent across the country to collect ex parte affidavits is not a substantial compliance with the rights guaranteed by the Code. Apparently in this case, had civilian defense counsel appeared, he would have been handed a sheaf of papers for informative reading as the important witnesses were some 150 miles removed from the scene of the alleged pretrial hearing. His waiver, therefore, could hardly reach his client's right to a hearing.

One matter which repeatedly sticks its head up in general court-martial records is the belief that, because strict compliance with Article 32 is not jurisdictional, it may be carried on in a haphazard manner or, for all practical purposes, utterly abandoned. Sooner or later the military services must realize that this process is the military counterpart of a civilian preliminary hearing, and it is judicial in nature and scope. At the time of the hearing, the accused is entitled to counsel if he so requests, and he should be informed to that effect. Furthermore, he should be advised that he is entitled to cross-examine the witnesses and, if he desires to exercise that right, with or without counsel, he should be permitted to do so. I need hardly say that advising him of his right is worthless if the hearing is not to involve the presence of witnesses. If an accused does not want a full-dress hearing, then the record should disclose that he has requested affirmatively to dispense with that preliminary step. Absent that request, witnesses must be produced for examination and cross-examination. Now, I do not mean to say that when a hearing is held, all witnesses to be used at trial need be called by the Government, but those witnesses who furnish the evidence upon which the investigating officer makes his recommendation must be present if desired by the accused. Furthermore, the defense should be furnished the names of those who might be called subsequently. If that is not done, then indeed a pretrial hearing is a hollow gesture.

Summed up, the preliminary handling of this case was either so lacking in the fundamentals of fairness or so confused because of the difficulties incident to handling confidential testimony, that charging either side with a large share of responsibility would be unjust and unfair. Under those circumstances, the doctrine of waiver ought not to be imposed, particularly when the issue was raised prior to the trial of the accused. In that connection, it seems to me that when an accused makes a motion for appropriate relief based on infirmities in the pretrial hearing, if there is some substance to his contention, the deficiencies should be corrected by giving him a new hearing before going to all of the trouble and expense incident to subsequent proceedings.

That leaves for disposition the question of prejudice. I have no difficulty in finding it present in substantial quantity. There is a distinct advantage in having a dress rehearsal, and Congress has given that privilege to an accused. When it is taken away, among other things, the opportunity to probe for weaknesses in the testimony of witnesses is denied; the probability of developing leads for witnesses who may be of assistance to the defense is decreased; and, the contingency of reducing the crime to one lesser than the one alleged is defeated. In this particular instance, the accused was denied at least the first two, and that was prejudicial to his defense.