[No. F016929. Fifth Dist. June 26, 1992.]

RAY BAY, JR., Petitioner, v.
THE SUPERIOR COURT OF FRESNO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

1024

**Counsel**

Jose R. Villarreal, Public Defender, and Garrick Byers for Petitioner.

No appearance for Respondent.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Edgar A. Kerry and Jane Olmos, Deputy Attorneys General, for Real Party in Interest.

**Opinion**

**ARDAIZ, J.—**

### Statement of Case

As part of an investigation that petitioner was practicing law without a license and was obtaining funds by false pretenses, Investigator Ray Cereghino of the Fresno County District Attorney's Office sought a search warrant for petitioner's apartment. Because of the nature of the petition before this court, the background facts are not particularly well developed; however, from the moving papers of both parties we glean that the magistrate issued a search warrant based upon the affidavit of Investigator Cereghino. Apparently, because of concerns about lawyer/client privilege[1] regarding communications from individuals who may have believed petitioner was an attorney, the magistrate appointed Samuel C. Palmer III to

---

[1] California Evidence Code section 950 provides "[a]s used in this article, 'lawyer' means a person authorized, or *reasonably believed by the client to be authorized*, to practice law in any state or nation." (Italics added.)

serve as a special master in the case.[2] Investigator Cereghino served the search warrant and Special Master Palmer conducted the search. Following the seizure of numerous documents, petitioner filed a suppression motion on the ground the search warrant was overbroad. The motion was denied and petitioner now seeks a writ of mandate directing respondent court to vacate its order denying his motion and to enter a new and different order granting the motion.

We conclude the search warrant is overbroad. Nonetheless, we find under the good faith exception as set forth in *United States* v. *Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405] and *People* v. *Camarella* (1991) 54 Cal.3d 592 [286 Cal.Rptr. 780, 818 P.2d 63] that the evidence need not be suppressed.

DISCUSSION

*Overbreadth*

Both the United States Constitution and the Constitution and statutory law of California require that items seized pursuant to a search warrant be described with particularity. (U.S. Const., 4th Amend.; Cal. Const., art. I, § 13; Pen. Code, § 1525.) ▉ By virtue of article I, section 28, subdivision (d) of the California Constitution, application of the exclusionary rule is governed by federal constitutional law. (*In re Lance W.* (1985) 37 Cal.3d 873, 886-887 [210 Cal.Rptr. 631, 694 P.2d 744].)

The Fourth Amendment to the United States Constitution provides:

---

[2]Penal Code section 1524(c) provides in pertinent part as follows: "(c) Notwithstanding subdivision (a) or (b), no search warrant shall issue for any documentary evidence in the possession or under the control of any person, who is a lawyer as defined in Section 950 of the Evidence Code, a physician as defined in Section 990 of the Evidence Code, a psychotherapist as defined in Section 1010 of the Evidence Code, or a clergyman as defined in Section 1030 of the Evidence Code, and who is not reasonably suspected of engaging or having engaged in criminal activity related to the documentary evidence for which a warrant is requested unless the following procedure has been complied with: [¶] (1) At the time of the issuance of the warrant the court shall appoint a special master in accordance with subdivision (d) to accompany the person who will serve the warrant. Upon service of the warrant, the special master shall inform the party served of the specific items being sought and that the party shall have the opportunity to provide the items requested. If the party, in the judgment of the special master, fails to provide the items requested, the special master shall conduct a search for the items in the areas indicated in the search warrant. [¶] . . . [¶] (d) As used in this section, a 'special master' is an attorney who is a member in good standing of the California State Bar and who has been selected from a list of qualified attorneys which is maintained by the State Bar particularly for the purposes of conducting the searches described in this section. . . ."

"[N]o warrants shall issue, but upon probable cause, supported by Oath or Affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

In determining whether the particularity requirement has been met, federal courts have looked to one or more of the following criteria: "(1) whether probable cause exists to seize all items of a particular type described in the warrant, [citations]; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not, [citations]; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued . . . ." (*United States* v. *Spilotro* (9th Cir. 1986) 800 F.2d 959, 963.)

The warrant in the present case did not describe or list the specific crimes suspected. Both the affidavit and the warrant in the present case authorized the seizure of:

"[A]ll documents, writings, and property, including but not limited to the following; general ledgers; general journals; cash disbursement journals; purchase journals; paid bills; invoices; cash receipts journals; billings; check registers and check stubs; contracts and copies of contracts, including all retainer agreements; bank deposit slips; income tax returns; accounts receivable ledgers; telephone company statements and telephone toll slips, safe deposit box records; memoranda and letters; working papers and legal files; transcripts of court proceedings; telephone message books; computer disks and tapes utilized for the storage of business correspondence and transactions; signature stamps; pre-addressed and pre-printed envelopes; business related ink stamps; business cards; typewriters; telephones, telephone answering devices, and telephone answering device tapes with recorded messages; and items or articles of personal property tending to show identity of person(s) in ownership, dominion, or control of said premises; including, but not limited to, rent receipts, utility bills, telephone and address books, delivered mail, keys, and photographs."

Respondent appears to concede that the reference to general categories of items is somewhat overbroad. However, respondent contends the warrant was sufficiently specific because the affidavit supporting the warrant established probable cause to believe petitioner was practicing law without a license at his apartment. According to respondent, given the nature of the crime and the need to establish petitioner's connection with the residence, it was not possible to more definitely describe the items to be seized. Respondent, in effect, contends that the affidavit would resolve any ambiguity as to

what was to be seized and cites to *People* v. *Moore* (1973) 31 Cal.App.3d 919 [107 Cal.Rptr. 590] for the proposition that "safeguards were present because the search and seizure was conducted by the same investigator who had sworn the affidavit." Respondent contends Investigator Cereghino submitted the affidavit describing the basis for seizing the property in question and "[t]he warrant was issued with the intent that said property be seized and it was that property that was searched for and seized by the special master with Investigator Cereghino present and working with the special master in the execution of the warrant."

We need not address this contention in detail because it disposes of itself on the facts of the record before us. The search was not conducted by the affiant. Rather, the search was conducted by a special master. Nothing in the record indicates the affidavit was attached to the warrant, that the special master executing the search read the affidavit or that the affidavit was present at the time of the search. Accordingly, the affidavit may not be relied on to cure any defect in the overbreadth of the warrant. Further, it was the special master who made the seizures. Nothing in the record supports the conclusion the seizures were made by the affiant.

Respondent further asserts the warrant was not overbroad because, given the nature of the crime, it was impossible more particularly to describe the items to be seized. Respondent's argument might have some merit had the warrant, at a minimum, indicated the nature of the crime. Such indication would have provided the executing officer with meaningful limits on the nature of the items to be seized in order to ensure there was probable cause for all the items seized. However, as previously noted, the warrant in the present case made no mention of the crime suspected. Thus, the executing officer, in this case the special master, could determine the items to be seized by virtue of their categorical description in the warrant but could not make any discriminate selection of particular items to be seized that would fall within the general categories described. Further, because of the general categories described by the terms of the warrant, seizure was not limited to items for which the affidavit might have supplied probable cause as opposed to items for which probable cause did not exist. It is analogous to a search warrant affidavit that concerns stolen property consisting of brown leather-covered chairs and a search warrant which on its face states that all chairs are to be seized. The executing officer would understand the general category of the items to be seized but, because of the deficiency in the description, would pick up all chairs without regard to whether they were brown leather-covered chairs or red, etc.

■ " 'The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and

prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.' *Marron* v. *United States* [1927] 275 U.S. 192, at 196 [72 L.Ed. 231, 237, 48 S.Ct. 74]." (*Stanford* v. *Texas* (1964) 379 U.S. 476, 485-486 [13 L.Ed.2d 431, 437, 85 S.Ct. 506].)

 We conclude the warrant was constitutionally deficient in its description of the items to be seized and was overbroad.

*Good Faith Exception*

The conclusion the warrant was overbroad does not end our inquiry. The issue is not limited to whether the warrant violates the United States and California Constitutions. Rather, the issue is whether the sanction of the exclusionary rule should be imposed for that violation. In *United States* v. *Leon, supra,* 468 U.S. at page 922 [82 L.Ed.2d at page 698], the Supreme Court addressed the considerations where a magistrate had issued a legally unjustified warrant.

" '[E]xcluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that . . . the officer is acting as a reasonable officer would and should act in similar circumstances. Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty.' " (*Leon* quoting *Stone* v. *Powell* (1976) 428 U.S. 465, 539-540 [49 L.Ed.2d 1067, 1114, 96 S.Ct. 3037].)

"This is particularly true, we believe, when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope. In most such cases, there is no police illegality and thus nothing to deter. It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. '[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law.' [Citation.] Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." (*United States* v. *Leon, supra,* 468 U.S. at pp. 920-921 [82 L.Ed.2d at p. 697], fns. omitted.)

The court had earlier stated in *Leon*:

" 'If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.' " (*Leon, supra,* 468 U.S. at p. 919 [82 L.Ed.2d at p. 696].)

The court, however, provided for the remedy of exclusion where the conduct of the police and/or the magistrate fall within defined categories. This has come to be called "the good-faith exception" to the exclusionary rule. Our Supreme Court recently explained this good faith exception as follows:

"In *Leon,* the high court held 'the Fourth Amendment exclusionary rule should be modified so as not to bar the use in the prosecution's case in chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause.' [Citation.] The court made clear that the government has the burden of establishing 'objectively reasonable' reliance [citation], and it described four limited situations in which such reliance would not be established, and in which suppression under the exclusionary rule would remain an appropriate remedy: (i) the issuing magistrate was misled by information that the officer knew or should have known was false; (ii) the magistrate 'wholly abandoned his judicial role'; (iii) *the affidavit was ' "so lacking in indicia of probable cause" ' that it would be ' "entirely unreasonable" ' for an officer to believe such cause existed*; and (iv) the warrant was so facially deficient that the executing officer could not reasonably presume it to be valid. ([468 U.S.] at p. 923 [82 L.Ed.2d at p. 699], italics added.) This case concerns application of the third of these situations." (*People* v. *Camarella, supra,* 54 Cal.3d at p. 596.)

Petitioner contends the good faith exception of *Leon* does not apply in the present case. He rests his attack on the fourth *Leon* exception: "[T]he warrant was so facially deficient that the executing officer could not reasonably presume it to be valid." (54 Cal.3d at p. 596.)

Much of petitioner's argument is wasted contending overbreadth resolves the issue. If the warrant were not overbroad we would not face the good faith issue. At the outset, we must conclude the officer took the warrant to a magistrate, the warrant was overbroad, the magistrate failed to restrict the warrant or refuse issuance of the warrant and, accordingly, the warrant was executed.

Our system necessarily assumes the magistrate will either correct or refuse a deficient warrant. The logic of *Leon* recognizes that this does not always

happen. We do not expect the police officer to have the same degree of knowledge or objectivity as the magistrate and, thus, it is the magistrate who tells the police officer when his/her warrant has passed constitutional muster. Nevertheless, as the Supreme Court concluded in *Leon*, "the officer's reliance on the magistrates probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable . . . ." (*Leon, supra*, 468 U.S. at p. 922 [82 L.Ed.2d at p. 698].)

In *Camarella* our high court distilled the following concepts for guidance on this issue.

" ' "If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer *had knowledge, or may properly be charged with knowledge*, that the search was unconstitutional under the Fourth Amendment." ' [¶] . . . An 'officer's reliance on the magistrate's probable-cause determination . . . must be objectively reasonable . . . in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued.' [Citations.] [T]he . . . inquiry in this regard will be 'confined to the objectively ascertainable question whether a reasonably well trained officer would have *known* that the search was illegal despite the magistrate's authorization.' " (*Camarella, supra*, 54 Cal.3d at pp. 602-603.)[3]

■ We, therefore, review the issue on an objective basis as whether a reasonably well trained police officer would have concluded the warrant was so facially deficient that he or she, as executing officer, could not reasonably presume it to be valid. We conclude this requirement does not restrict itself to the legal concept of overbreadth.[4] That concept involves several criteria. A specific description of the item or items to be seized assumes that probable cause exists in the affidavit to seize that item. As we view the issue of facial deficiency in a warrant, probable cause is not the issue. The executing officer is not charged with making a determination of whether probable cause exists to justify seizing the item described. Another aspect of overbreadth is whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not. As was related in *Marron* v. *United States* (1927) 275 U.S. 192, 196 [72 L.Ed. 231, 237, 48 S.Ct. 74], "nothing is left to the discretion of the officer executing the warrant."

---

[3]The court then related these considerations to the third criteria that would take the officer's reliance outside of the good faith exception because that criteria was in issue in that case.

[4]In the present case, the warrant was executed by a special master rather than a police officer. However, we conclude the same standard is applicable regardless of who the executing official is.

In the instant case, there is no uncertainty of description. This is not a case where an officer was instructed to "seize evidence of a crime" or, as in *Thompson* v. *Superior Court* (1977) 70 Cal.App.3d 101 [138 Cal.Rptr. 603], "stolen property." Here, the items were sufficiently described so that the executing officer would know what to seize. The problem is that the description could include items of the same class for which there was no probable cause (i.e., "general ledgers; general journals; cash disbursement journals," etc.) as well as items that fell within that description for which there was probable cause. However, as we have noted, it is the function of the magistrate, not the executing officer, to determine whether there is probable cause to seize the things described. The executing officer's function would be to seize the thing described with sufficient particularity so he/she would know what to seize.

In the present case, a magistrate might well have concluded from the affidavit that the property description in the warrant was of such a general nature that it should have been more restricting. However, we cannot conclude that a reasonably well-trained police officer would have or should have recognized that the description of property on the face of the warrant was so general in nature that he/she could only speculate whether an item of property was among the items to be seized (i.e., stolen property). In sum, viewed objectively, we cannot conclude the executing officer could not reasonably assume the warrant was valid. Therefore, even though we find the warrant overbroad, we do not find the conduct of the officer unreasonable. It is only unreasonable police conduct that is sanctioned by the exclusionary rule. We find the good faith exception of *Leon* applicable in the instant case and, therefore, conclude the motion to suppress was properly denied.

The petition for writ of mandate is denied.

Best, P. J., and Stone (W. A.), J., concurred.

A petition for a rehearing was denied July 13, 1992, and petitioner's application for review by the Supreme Court was denied September 17, 1992. Mosk, J., was of the opinion that the application should be granted.