**UNITED STATES of America, Plaintiff,**

v.

**Virginia CLARK, Defendant.**

**No. SA CR 97–99–GLT (SF).**

United States District Court,
C.D. California.

June 4, 1998.

---

Captain Paul Leeds, Special Assistant United States Attorney, for plaintiff.

Michael J. McCabe, San Diego, CA, for defendant.

## ORDER DENYING DEFENDANT'S DISMISSAL MOTION

TAYLOR, District Judge.

The Court holds California's unauthorized practice of law statute, Business and Professions Code § 6126, is assimilated as a federal crime on a military installation under the federal Assimilative Crimes Act, 18 U.S.C. § 13(a).

## I. *BACKGROUND*

Defendant Virginia Clark is charged with practicing law without a license while defending the military court-martial of three Marines. The government alleges a violation of California Business and Professions Code § 6126[1], chargeable under the Assimilative Crimes Act (the "ACA")[2] since Defendant's conduct occurred in part on a federal enclave.

The government contends Defendant is a law school graduate, but never has been admitted to any bar. The government charges Defendant purportedly represented three Marines through the early stages of their court-martial, holding herself out as a qualified lawyer,[3] until removed for an apparent

---

1. California Business and Professions Code, Section 6126 provides:

   Unauthorized practice, advertising or holding out; penalties. (a) Any person advertising or holding himself or herself out as practicing or entitled to practice law or otherwise practicing law who is not an active member of the State Bar, is guilty of a misdemeanor.

   All further statutory references are to the California Business and Professions Code unless otherwise noted.

2. The Assimilative Crimes Act ("ACA") provides:

   Whoever within or upon any [federal enclave] ... is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State ... in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

   18 U.S.C. § 13(a).

3. Under Article 38(b) a military accused has the right to be represented at his special or general court-martial by civilian counsel provided at his own expense. *See United States v. Kinard*, 45 C.M.R. 74, 77, 1972 WL 14127 (C.M.A.1972); *United States v. Nichols*, 23 C.M.R. 343, 1957 WL 4495 (C.M.A.1957). In order for this right to be meaningful, civilian counsel must be a qualified lawyer. *See United States v. Kraskouskas*, 26 C.M.R. 387, 389 (C.M.A.1958). Such a "quali-

conflict of interest. Her non-lawyer status was discovered thereafter.

Defendant has moved to dismiss the complaint arguing California's unauthorized practice statute, § 6126, cannot be assimilated to become a federal crime under the ACA. This is a case of first impression. The Court concludes § 6126 is a prohibitory criminal statute which provides a gap-filling criminal code where Congress has not exclusively made such conduct punishable, and is properly assimilated under the ACA.

## II. *DISCUSSION*

■ For a state statute to be assimilated as a federal crime under the ACA it must be criminal, prohibitory, and no act of Congress makes the conduct punishable to the exclusion of state law. *See generally United States v. Palmer*, 956 F.2d 189, 191 (9th Cir.1992) (summarizing the requirements for assimilation under the ACA).

### A. *A Criminal Statute*

■ Although the ACA on its face makes no distinction between criminal and civil punishment statutes, the Ninth Circuit generally understands the ACA to assimilate only a state's criminal laws.[4] *United States v. Carlson*, 900 F.2d 1346, 1348 (9th Cir.1990). This "accomplishes the [ACA's] objective of providing a criminal law for federal enclaves while at the same time effectuating the policy

of conformity to local law." *United States v. Best*, 573 F.2d 1095, 1099 (9th Cir.1978). Thus, in the Ninth Circuit, for California's § 6126 to be assimilated, it must be a criminal statute. The question whether a statute is criminal is best resolved by looking at how the state classifies and punishes a violation of the statute.

California classifies the unauthorized practice of law as criminal.[5] A violation of § 6126 is a misdemeanor. A misdemeanor is either a "crime" or a "public offense" which is synonymous with "a crime." *Burks v. United States*, 287 F.2d 117 (9th Cir.1961). The statute is subject to criminal punishment. In California, "[e]xcept in cases where a different punishment is prescribed by any law of this state, every offense declared to be a misdemeanor is punishable by imprisonment in the county jail not exceeding six months, or by fine not exceeding one thousand dollars ($1,000), or by both." Cal.Penal Code § 19; *see also People v. Vanderpool*, 20 Cal.2d 746, 750, 128 P.2d 513 (1942). Moreover, § 6126 has been used by California as the basis of criminal prosecution and conviction.[6] *See, e.g., Bay v. Superior Court (People)*, 7 Cal. App.4th 1022, 9 Cal.Rptr.2d 339 (1992); *Burris v. Superior Court of Tulare County*, 43 Cal.App.3d 530, 117 Cal.Rptr. 898 (1974). The Court concludes § 6126 is a criminal statute.

fied" attorney additionally must be "authorized by some recognized licensing authority to engage in the practice of law." *Id.* at 389.

4. Although the Ninth Circuit only assimilates criminal offenses, other courts are divided over the issue. *Compare United States v. Carlson*, 900 F.2d 1346, 1347 (9th Cir.1990) (Hawaii's speeding law is civil and cannot be assimilated); and *United States v. Rowe*, 599 F.2d 1319, 1320 (4th Cir.1979) (Virginia's state law provision allowing license suspension for refusal to take breathalyser test is civil and cannot be assimilated); with *United States v. Manning*, 700 F.Supp. 1001 (W.D.Wis.1988) (assimilating Wisconsin's drunk driving statute even though it provides only civil penalties); and *United States v. White*, 39 M.J. 796, 804–05 (N.M.C.M.R.1994) (rejecting Carlson and assimilating Hawaii's open alcohol container law).

5. California courts have consistently referred to violation of § 6126 as a criminal act. *See People v. Medler*, 177 Cal.App.3d 927, 934, 223 Cal.Rptr.

401 (1986)(stating the unlawful practice of law is criminally sanctioned); *Abar v. Rogers*, 124 Cal. App.3d 862, 177 Cal.Rptr. 655 (1981)(finding a violation of § 6125 is a criminal act); *Mickel v. Murphy*, 147 Cal.App.2d 718, 305 P.2d 993 (1957)(finding violation of § 6125 creates criminal liability); *Matter of Trousil*, 1990 WL 180836, 1 Cal. State Bar Ct.Rptr. 229 at *4 (1990)(finding §§ 6125 and 6126 are criminal provisions).

6. The California treatment of the unlicensed practice of law is like to the treatment of the unlicensed practice of medicine. Under the California Business and Professions Code the unlicensed practice of medicine can be either a felony or a misdemeanor. *See* §§ 2052 and 2053. Likewise, individuals violating these statues have been criminally charged and convicted. *See, e.g., People v. Burroughs*, 234 Cal.App.3d 245, 285 Cal.Rptr. 622 (1991).

## B. *A Prohibitory Statute*

■ In the Ninth Circuit, not every criminal law may be assimilated by the ACA. Only criminal laws which are prohibitory rather than regulatory are assimilable. *Carlson,* 900 F.2d at 1348.[7] "[A]pplicable state laws governing an activity must be examined in detail before they can be characterized as regulatory or prohibitory." *California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 211 n. 10, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987). In making this distinction courts are encouraged to examine a state's underlying interests. *Id.* at 209, 107 S.Ct. 1083. "[I]f the intent of a state law is generally to prohibit certain conduct, it [is prohibitory] ... but if the state law generally permits the conduct at issue, subject to regulation, it must be classified as [regulatory]". *Id.*

■ Two public interests underlie § 6126's restriction against unlicensed practice of law. *See Russell v. Dopp,* 36 Cal.App.4th 765, 773, 42 Cal.Rptr.2d 768 (1995). First, California has an interest in requiring attorneys to be licensed so the public is protected from being advised and represented by unqualified persons. *Gerhard v. Stephens,* 68 Cal.2d 864, 917–918, 69 Cal.Rptr. 612, 442 P.2d 692 (1968). Representation of a criminal defen-

dant by an unlicensed person is so objectionable that it is a per se deprivation of the defendant's constitutional right to counsel. *See McShane v. United States,* 366 F.2d 286 (9th Cir.1966). Second, California has an interest in stopping the unlicensed practice of law to protect the integrity of the judicial process. *Alexander v. Robertson,* 882 F.2d 421, 423–425 (9th Cir.1989). In furtherance of these two public interests, the unlicensed practice of law in California is prohibited, not simply regulated. *See, e.g., Crawford v. State Bar of Cal.,* 54 Cal.2d 659, 666, 7 Cal.Rptr. 746, 355 P.2d 490 (1960) (referring to § 6126 as *prohibiting* the practice of law by persons who are not active members of the State Bar); *Drake v. Superior Court,* 21 Cal.App.4th 1826, 1827, 26 Cal.Rptr.2d 829 (1994)(same); *Howard v. Superior Court for Los Angeles County,* 52 Cal.App.3d 722, 726, 125 Cal.Rptr. 255 (1975) (same).

After applying the Ninth Circuit's regulatory/prohibitory distinction to § 6126, the Court concludes the California unauthorized practice of law statute is prohibitory.

## C. *No Applicable Federal Statute*

The ACA establishes a gap-filling criminal code for federal enclaves only "if no act of

---

**7.** Although the Ninth Circuit uses the regulatory/prohibitory distinction, other circuits are divided over whether this distinction should be applied. *See, e.g., Iowa Tribe of Indians v. Kansas,* 787 F.2d 1434, 1435–36 n. 1 (10th Cir.1986) (approving the regulatory/prohibitory distinction); *Seminole Tribe of Florida v. Butterworth,* 658 F.2d 310, 313 (5th Cir.1981) (applying the regulatory/prohibitory distinction); *but see United States v. Devenport,* 131 F.3d 604, 607 (7th Cir.1997) (declining to distinguish laws which regulate speeding and those which prohibit drunk driving); *United States v. Dakota,* 796 F.2d 186 (6th Cir.1986) (rejecting the regulatory/prohibitory test in non-Public Law 280 cases).

The Ninth Circuit acquired the regulatory/prohibitory distinction from *California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 208–11, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987). In *Cabazon Band,* the Supreme Court held state regulatory laws which carry criminal penalties should not be assimilated onto Indian reservations because of historical concepts of tribal sovereignty. "[C]ongressional authority and the semi-independent position of Indian tribes ... [are] ... two independent but related barriers to the assertion of state regulatory authority over tribal reservations and members." *White Mountain Apache Tribe et al. v. Bracker,* 448 U.S. 136, 142, 100

S.Ct. 2578, 65 L.Ed.2d 665 (1980). Moreover, "tribal sovereignty is dependent on, and subordinate to, only the Federal Government, not the States." *Id.* at 154, 100 S.Ct. 2578.

The Ninth Circuit, however, has not expressly ruled whether non-assimilation of regulatory provisions is proper for military enclaves. Only one case in the circuit has commented on the regulatory/prohibitory distinction in the context of a military enclave. *See, United States v. Carlson,* 714 F.Supp. 428 (D.Haw.1989), *rev'd* 900 F.2d 1346 (9th Cir.1990). The appropriateness of regulatory non-assimilation on a military enclave is questionable since the military is not a sovereignty, but is an administrative agency. The comity concerns raised in *Cabazon Band* do not exist for military enclaves. *See Parisi v. Davidson,* 405 U.S. 34, 51, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972). Nonetheless, non-assimilation may be appropriate since military law concerns are quite different than civilian law. *See Noyd v. Bond,* 395 U.S. 683, 696, 89 S.Ct. 1876, 23 L.Ed.2d 631 (1969).

This ruling, however, need not resolve whether assimilation of a regulatory provision onto a military enclave is appropriate since the Court has concluded § 6126 is a prohibitory, not a regulatory, provision.

Congress makes such conduct punishable." *United States v. Marcyes,* 557 F.2d 1361, 1365 (9th Cir.1977); *see also Williams v. United States,* 327 U.S. 711, 724, 66 S.Ct. 778, 90 L.Ed. 962 (1946). In making this determination the Supreme Court has directed:

> [courts] must first ask the question that the ACA's language requires: Is the defendant's "act or omission ... made punishable by any enactment of Congress." If the answer to this question is "no," that will normally end the matter.... If the answer to the question is "yes," however, the court must ask the further question whether the federal statutes that apply to the "act or omission" preclude application of the state law in question ... The primary question (we repeat) is one of legislative intent: Does applicable federal law indicate an intent to punish conduct such as the defendant's to the exclusion of the particular state statute at issue?

*Lewis v. United States,* — U.S. —, 118 S.Ct. 1135, 1141, 140 L.Ed.2d 271 (1998).

Although two federal enactments touch on the topic, under the *Lewis* test no act of Congress makes the unlicensed practice of law punishable to the exclusion of § 6126.

First, by executive order, Rule for Courts–Martial ("RCM") 502(d)(3) defines who is authorized to practice law in a court-martial proceeding. Under this rule, civilian counsel may practice if admitted to the bar of a Federal court, the bar of the highest court of a State, or otherwise authorized.[8] RCM 502, however, is not an act of Congress nor a criminal rule. RCM 502 does not attempt to make unlicensed practice of law punishable. Thus, RCM 502 does not represent an "act of Congress [which] makes such conduct punishable," and does not prevent assimilation of California's unlicensed practice statute.

Second, a military court apparently could punish unauthorized practice of law under its criminal contempt powers.[9] Article 48 of the Uniform Code of Military Justice provides: "A court-martial, provost court, or military commission may punish for contempt any person who uses any menacing word, sign, or gesture in its presence, or who disturbs its proceedings by any riot or disorder." 10 U.S.C. § 848.[10]

Under appropriate circumstances, practicing law without a license in a military court could be considered a disorder which disturbs judicial proceedings. Under Article 48 a disorder disturbing the proceedings pertains to:

> [Conduct] so rude and pronounced as to amount to a positive intrusion upon and interruption of the proceedings of the court.

*United States v. Burnett,* 27 M.J. 99, 105 (1988). It is true that cases applying Article 48 usually refer to the military contempt power as limited to overt disruptive behavior. *See, e.g., United States v. Gray,* 14 M.J. 551 (A.C.M.R.1982). Nevertheless, Defendant's alleged conduct was an affront to the judiciary and an abuse of her "clients" rights. Although Defendant's conduct does not fall within a traditional application of Article 48, a military judge could probably find Defendant's conduct punishable under the military contempt statute. Therefore, defendant's conduct is potentially punishable under a federal statute.

However, nothing in Article 48 or its legislative history indicates it was intended to so

---

8. RCM 502 does not conflict with the rules defining who may practice law in California; rather RCM 502 incorporates both § 6125 and California's pro hoc vice rules. Section 6125 states "[n]o person shall practice law in California unless the person is an active member of the State Bar." California's pro hoc vice rules allows an attorney who is eligible to appear before any bar or any court to practice in California. *See* Cal. Rule of Court 983. Read in conjunction these California rules define who is entitled to practice law in a manner identical to RCM 502. *See also* Cal. Rule of Court 983.1 (authorizing appearance in state court by military counsel).

9. While at least one civilian court has used the federal contempt statute to address the unlicensed practice of law, *see, e.g., United States v. Peterson,* 550 F.2d 379, 383 (7th Cir.1977), apparently no reported military case has used the criminal contempt power to address such conduct.

10. Any person, civilian or military, is probably subject to the provisions of Article 48. *United States v. Hunt,* 22 C.M.R. 814, 818, 1956 WL 4886 (A.F.B.R.1956).

occupy the field as to exclude the assimilation of a state unauthorized practice statute. The generalized language of the contempt power does not appear to exclude a specific statutory provision defining a specific crime. The Court concludes the contempt Article does not preclude assimilation of California's § 6126.

### III. *DISPOSITION*

■ Congress, in enacting the ACA, sought to accomplish three goals: establish a gap-filling criminal code for federal enclaves, create conformity between the laws governing a federal enclave and the state in which the enclave is located, and provide individuals on the federal enclave as much protection as afforded to those outside the enclave. *United States v. Kiliz*, 694 F.2d 628, 629 (9th Cir.1982). Assimilation of California's § 6126 meets each of these goals. By criminalizing the unlicensed practice of law, § 6126 establishes a criminal code in an area Congress has not addressed. Assimilation of this section promotes conformity of treatment off the military base and on. Finally, § 6126 protects individuals within the federal enclave from being advised and represented by persons who are not qualified to practice law.

The Court holds California Business and Professions Code § 6126 is assimilable under the ACA. Defendant's Motion to Dismiss is DENIED.