**UNITED STATES of America, Plaintiff,**

v.

**James A. TRAFICANT, Jr., Defendant.**

**Crim. A. No. CR82–148Y.**

United States District Court,
N.D. Ohio, E.D.

Feb. 4, 1983.

See also, D.C., 558 F.Supp. 996.

Stephen H. Jigger, U.S. Dept. of Justice, Cleveland, Ohio, for plaintiff.

Mark Gervelis, Ashtabula, Ohio, Michael S. Harshman, Youngstown, Ohio, for defendant.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

Pending before the Court is defendant Traficant's Motion to Suppress Written and Oral Statements. For the reasons set forth below, Traficant's motion is denied.

Traficant, the present Sheriff of Mahoning County, is charged with accepting bribes from Charles and Orland Carrabia, James Prato and Joseph Naples, Jr., in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* Evidence in this case includes tape recordings of conversations between Traficant and the Carrabias in which they discuss the money allegedly exchanged be-

tween them and between Traficant and Prato. These tapes, which were the subject of a separate motion to suppress, will be introduced at trial. The statements, which are the subject of the instant Motion to Suppress, were given to the FBI by Traficant at a series of meetings, beginning on June 15, 1981, subsequent to the FBI's acquisition of the tapes. Traficant claims these statements were involuntarily given and were extracted from him by agents of the FBI in violation of his Fifth and Sixth Amendment rights.

The facts surrounding the meetings are important for full comprehension of the basis of Traficant's motion. A lengthy suppression hearing was held to ascertain the salient facts. Those testifying were three FBI special agents, and the Cleveland Strike Force Attorney-in-Charge. No testimony was offered by the defendant.

## FINDINGS OF FACT

At Traficant's first meeting with the FBI agents on June 15, 1981, which he attended voluntarily and at the agents' request, he gave the Signed Statement he now seeks to suppress. The meeting took place at the FBI offices in Youngstown. Traficant was not in custody during the interview, nor was he ever restrained from leaving, or denied access to a telephone. Nor was he denied an opportunity to talk to a lawyer. There is no evidence that Traficant ever even made such a request, although more than one FBI agent testified that Traficant asked the agents if they thought he needed an attorney. It is undisputed that he was not given *Miranda* warnings. This Court finds credible the FBI agents' testimony that, even with the tapes, the government did not have probable cause to arrest Traficant when the meeting was called.

After Traficant denied that he knew or had ever met with the Carrabias, the FBI agents played a short portion of the recorded conversations between Traficant and the Carrabias. A statement, drafted in long-

hand by one of the FBI agents, was presented to Traficant. Briefly summarized, it stated that Traficant admitted accepting money from the Carrabias, Prato and Naples, in exchange for allowing illegal activities to take place in Mahoning County. Traficant immediately denounced the writing as "not true", and refused to sign. When questioned by the FBI agents regarding the inaccuracies, and after an offer was made to correct any inaccuracies, Traficant changed his position and signed what is now the challenged Signed Statement.[1] During the meeting, an FBI special agent discussed possible immunity for Traficant in exchange for his "one hundred percent cooperation" with the FBI in its investigation of the Carrabias, Prato and Naples, and the "source of the political corruption in Mahoning County". This Court specifically finds that no FBI agent ever made an absolute promise of immunity to Traficant. The meeting ended shortly after Traficant signed the Statement.

At least six meetings between Traficant and various FBI agents followed. The next meeting was also held at the FBI offices. Again, Traficant attended voluntarily. The third meeting was requested by Traficant. Subsequent meetings occurred at an apartment in Youngstown, instead of the FBI offices. Testimony established that Traficant arrived at all meetings alone and in an automobile he drove himself. No evidence of coercion or involuntariness with respect to Traficant's attendance at the meetings was so much as even suggested by the testimony. Likewise, there is no evidence that Traficant was ever restrained, threatened, beaten, or otherwise forced to make any of the statements given the FBI agents during these meetings.

Discussions at the meetings centered primarily on the FBI's efforts to convince Traficant to wear a body microphone and recorder while meeting with individuals the FBI wished to investigate, specifically Charles Onesti and Prato. The recorded

---

1. Traficant's supplemental motion that the Statement be suppressed because his signature on it is a forgery was withdrawn after a Court-appointed forensic document specialist examined the signature and reported to the Court that the signature was genuine.

conversations between Traficant and the Carrabias revealed that Onesti had allegedly delivered money to Traficant from Prato. Traficant refused the FBI agents' requests to wear a body mike because he feared for his safety and he wanted to protect Onesti, whom Traficant believed was not criminally culpable. During the course of these meetings, Traficant made more admissions to the FBI agents regarding his receipt of money during his campaign for Sheriff. The last meeting was on August 3, 1981 when the FBI, having decided that Traficant was not cooperating "one hundred percent", served Traficant with a subpoena.

## CONCLUSIONS OF LAW

### I. *Fifth Amendment Claims*

█ It is well-settled law that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of a defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). It is undisputed that Traficant was not given warnings under *Miranda v. Arizona, supra.* However, the key to the *Miranda* requirement is the custodial nature of the questioning. *See, Beckwith v. United States,* 425 U.S. 341, 346, 96 S.Ct. 1612, 1616, 48 L.Ed.2d 1 (1976). There is ample testimony to support this Court's finding that Traficant was never in custody when he made admissions to the FBI agents. His attendance at all the meetings was voluntary and he was never restrained from leaving. *Miranda* warnings were not required under the circumstances, and Traficant's statements were not procured in violation of his Fifth Amendment right against self-incrimination.

### II. *Voluntariness*

The totality of the circumstances must be considered when determining the voluntariness of a confession. *United States v. Brown,* 557 F.2d 541, 546 (6th Cir.1977). Both the physical conditions surrounding the confession and the psychological impact of the circumstances must be evaluated. *Culombe v. Connecticut,* 367 U.S. 568, 604–605, 81 S.Ct. 1860, 1880, 6 L.Ed.2d 1037 (1961). There is no claim that Traficant was physically abused or coerced. Rather, the thrust of Traficant's claim is that he was psychologically coerced with promises of immunity.

█ All the evidence leads to the conclusion that the promise of immunity extended to Traficant was purely conditional. At no time was Traficant offered a free gift of a "no-strings-attached" grant of immunity. Rather, he was offered an exchange: immunity in return for cooperation. At the first meeting, the specific requirements of cooperation (that he wear a body microphone and recorder) were delineated. After hearing testimony of the parties to these meetings (except Traficant who did not testify) this Court concludes that Traficant had second thoughts about his part of the bargain. Having decided the exchange was too risky, Traficant declined in subsequent meetings with the FBI agents to agree to wear a body recorder.

Traficant relies on *Bram v. United States,* 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897), claiming that a confession obtained by any promise, however slight, is involuntary. The wooden application of *Bram* is no longer the rule. See, *United States v. Ferrara,* 377 F.2d 16, 17 (2d Cir. 1967) *cert. denied,* 389 U.S. 908, 88 S.Ct. 225, 19 L.Ed.2d 225 (1967). "The test of voluntariness is whether an examination of all the circumstances reveals that the conduct of law enforcement officials was such as to overbear the defendant's will to resist and bring about confessions not freely self-determined." *Id.* Involuntariness is not established by the fact that the FBI agents told Traficant that his cooperation might result in a grant of immunity. *United States v. Frazier,* 434 F.2d 994, 995–996 (5th Cir.1970).

Moreover, testimony at the suppression hearing leads this Court to conclude that what factored more significantly in Traficant's decision to sign the Statement was

the playing of the tapes, and not the promises of possible immunity. Traficant has fallen far short of proving facts or presenting inferences which even approximate the circumstances present in cases where courts have found confessions invalid due to "mental involuntariness". *See, e.g., Culombe v. Connecticut, supra.*

This Court finds that insufficient evidence was presented to establish that Traficant was induced to sign the Statement by anything more compelling than his own conscience. The Signed Statement was not given involuntarily.

III. *Sixth Amendment Claim*

██ Traficant's claim that he was denied access to counsel is totally unsubstantiated and without legal merit. The Court has determined that Traficant was not in custody at any time during his meetings with the FBI agents. Even if Traficant had been in custody, it has been established that Traficant never requested that he be permitted to consult with his attorney. His inquiry to the FBI agents as to whether he should seek an attorney does not constitute a request to consult with one.

██ Furthermore, it is firmly established that "a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him." *Kirby v. Illinois,* 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411 (1972). Traficant was not the subject of criminal proceedings at the time of the meetings. Moreover, the FBI agents testified that there was not probable cause to even arrest Traficant at the time he was first invited to meet with them. An indictment against Traficant was not returned until August 9, 1982, over a full year after his last meeting with the FBI agents. Traficant's Sixth Amendment right to counsel was not violated.

For the foregoing reasons, Traficant's Motion to Suppress Written and Oral Statements is denied.

IT IS SO ORDERED.