[No. A049473. First Dist., Div. Two. Apr. 1, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN FRANCIS MURTHA, Defendant and Appellant.

COUNSEL

Elizabeth Bader, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, and John R. Vance, Jr., Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

KLINE, P. J.—Appellant John Francis Murtha appeals following his conviction, based upon a plea of nolo contendere, to a charge of residential burglary. (Pen. Code, §§ 459-460, former subd. 1.) He asserts the court erroneously denied his motion to quash the search warrant and suppress the seized evidence. We affirm.

### STATEMENT OF THE FACTS

On September 12, 1989, Officer Anthony Welch of the Suisun City Police Department received a telephone call from Sergeant Cimino of the Fairfield Department of Public Safety. Cimino told Welch he had received an anonymous tip that appellant and Anthony Moraga were going to commit a burglary in Suisun City. The informant reported that appellant and Moraga were going to meet at a Round Table Pizza restaurant in Fairfield, and were then going to burglarize a white house with green trim on Buena Vista Avenue in Suisun City. The informant could not provide the address, but indicated that a blue four-wheel drive vehicle would be parked in front of the house.

Officers Welch and Rowe drove to Buena Vista Avenue and determined that the house at 52 Buena Vista matched the informant's description. The officers performed a security check on the home, and found the rear sliding glass door closed, but unlocked. There were no signs of forced entry and the interior of the home appeared undisturbed. Officer Welch left a business card on the door, requesting the owners to contact him.

Later that day, Officer Smothers of the Suisun Police Department was dispatched to 52 Buena Vista to investigate a residential burglary. The victim, Richard Reed, reported that a pager, a wedding ring and tools were taken from his home.

On September 14 Officer Smothers told Welch a confidential informant had given him a tape cassette containing a conversation between appellant and Moraga in which they discuss robbing a house in the informant's neighborhood. The informant stated that he or she has known both appellant and Moraga for a long period of time.

The tape contained two conversations between appellant and Moraga. In the first conversation they discuss a "job to do," and note that there are guns

and money at Tom's house. The two agree to meet at Round Table Pizza in Fairfield to discuss the "job." In the second conversation the men say they are ready and agree to meet by a fence "right now."

At the preliminary hearing Officer Welch stated he knew it was illegal to surreptitiously tape-record other parties' telephone conversations. He nonetheless included the information gathered from the tape in the affidavit he prepared in support of the search warrant because he believed that so long as the tape was made by a private citizen, and not a police officer, it could be used as evidence. Welch testified he discussed the use of the tape with his supervisor, who told him he could include the information from the telephone conversation in the affidavit. Finally, Officer Welch admitted he had not disclosed in his affidavit that the tape of the suspects' conversation was illegally recorded.

Officer Welch obtained a search warrant and searched Moraga's home on September 15. During the search a PacTel pager was discovered in Moraga's bedroom and Moraga was placed under arrest. Subsequently, appellant's home was searched and he too was arrested for the burglary. Moraga initially claimed he committed the burglary alone; however, after he listened to the tape-recorded conversations, he admitted appellant had helped him.

### STATEMENT OF THE CASE

On September 19, 1989, a complaint was filed in Solano County Municipal Court charging appellant with residential burglary. (Pen. Code, §§ 459-460, former subd. 1.)

On October 13, 1989, appellant filed a motion to quash search warrant and suppress evidence, and on November 9 filed supplemental points and authorities in support of the motion. The district attorney filed opposition papers on November 27. On November 30, following a hearing on the matter, the magistrate denied the motion, concluding (1) the information on the tape was properly included in the affidavit; and (2) Officer Welch had not recklessly omitted information from the affidavit. On December 15 appellant was arraigned in Superior Court on an information filed December 14, 1989.

On January 25, 1990, appellant filed a motion to traverse and quash search warrant and suppress evidence in the superior court; this was denied on February 21, 1990.

On March 1, 1990, appellant entered a plea of nolo contendere. He was thereafter placed on probation for three years, and was ordered to serve a

concurrent sentence of one hundred eighty days in the county jail. Appellant was also ordered to pay restitution fines and perform 100 hours of community service.

This timely appeal followed. In November 1991, we issued an opinion affirming the conviction. We subsequently granted appellant's petition for rehearing.[1]

## DISCUSSION

### I.

Appellant contends the court erred in denying his motion to quash the search warrant because the affidavit included evidence that was illegally obtained.

In 1968 the United States Congress enacted the Omnibus Crime Control and Safe Streets Act. (18 U.S.C. § 2510 et seq., the Act.) Title III of the Act makes it a crime for any person to surreptitiously intercept others' wire or oral communications unless prior authorization for the interception is obtained in accordance with the provisions of the Act.[2] Title 18 United States Code section 2515 contains a broad suppression provision that guards against the use of any illegally intercepted evidence: "Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter." As appellant correctly notes, the Act applies to private parties, since section 2511 forbids interception by "any person," and a "person" is defined as "any employee, or agent of the United States or of a State or political subdivision thereof, and *any individual*, partnership, association, joint stock company, trust or corporation." (18 U.S.C. § 2510(6), italics added.)

---

[1]Although we initially granted rehearing to consider the applicability to this case of the "good faith" exception recognized in *United States* v. *Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405] our reevaluation of the case makes it unnecessary to reach this issue.

[2]The Act allows certain federal agencies to obtain an order for a legal wiretap to aid in the investigation or prevention of certain specified types of serious crimes. Under 18 United States Code section 2516 the United States Attorney General or any Assistant Attorney General specially designated by the Attorney General may authorize an application to a federal judge for the FBI or other appropriate federal investigatory agency to legally intercept wire or oral communications. The application must contain details of the suspected offenses and reasons as to why other investigative procedures have not been or are not being used. (18 U.S.C. § 2518(1)(a)-(f).)

The parties agree that the taped conversations given the police were surreptitiously intercepted.[3] Appellant argues title III therefore absolutely precludes the use of the tape to support the search warrant. In response, the People maintain the Act does not apply here because the tape was made by a private party and the police were not involved in any wrongdoing.

Several federal cases have examined the application of title III where the tape recording is made by a private party, rather than the government. In *U.S.* v. *Vest* (1st Cir. 1987) 813 F.2d 477 the defendant, a police detective, was indicted for making false statements before a grand jury. He moved to suppress a privately made recording of a transaction proving (contrary to his statements under oath) that he accepted payments on behalf of another detective to ensure police efforts to protect an accused man from imprisonment. The accused man, Waters, testified at the suppression hearing that he made the tape to create a record in the event the officers denied that payment had been made.

The government claimed the exclusionary rule of title 18 United States Code section 2515 was inapplicable because it was the "innocent recipient, rather than the procurer," of the illegally intercepted communication. (813 F.2d at p. 480.) The government argued, as the People do in this appeal, that because the purpose of section 2515 was to deter further violations of the Act, the statutory objectives would not be served by applying the exclusionary rule against the government where it is merely the innocent recipient of the recording.

The court in *Vest* rejected this argument, concluding section 2515 was not solely intended to deter violations of the Act. The court noted that "the protection of privacy was an overriding congressional concern" when title III was passed (813 F.2d at p. 481, quoting *Gelbard* v. *United States* (1972) 408 U.S. 41, 47-52 [33 L.Ed.2d 179, 186-189, 92 S.Ct. 2357]) and observed that "an invasion of privacy is not over when an interception occurs, but is compounded by disclosure in court or elsewhere. The impact of this second invasion is not lessened by the circumstance that the disclosing party (here, the government) is merely the innocent recipient of a communication illegally intercepted by the guilty interceptor . . . ." (813 F.2d at p. 481.)

The court in *U.S.* v. *Underhill* (6th Cir. 1987) 813 F.2d 105 reached the opposite conclusion on similar facts. In that case, the defendants, participants in an illegal gambling enterprise, sought to suppress recordings of

---

[3]At the hearing on the motion to suppress, Officer Welch testified that he realized the parties to the taped conversations were not aware that they were being recorded. He stated that he knew it would have been illegal for law enforcement officers to secretly make such a tape, but thought "that a citizen could do it legally." The district attorney also conceded that the parties to the conversations never consented to the tape, and the magistrate agreed, referring to it as "an illegal wiretap."

telephone conversations some of them had made in the course of running their gambling operation. The court refused to suppress the evidence on two grounds. First, the court concluded "Congress did not intend for § 2515 to shield the very people who committed the unlawful interceptions from the consequences of their wrongdoing." (813 F.2d at p. 112.) The court also reasoned that Underhill waived his right of privacy with respect to these conversations by "[his] deliberate act of causing them to be recorded." (*Ibid.*)

Similarly, in *Traficant v. C.I.R.* (6th Cir. 1989) 884 F.2d 258, a member of Congress charged with failure to report bribes sought to suppress a recording surreptitiously made by one of his bribers. The court refused to suppress the recording, concluding title III was not intended "to protect wrongdoers whose criminal activity is tape recorded by their own confederates." (884 F.2d at p. 266.)

Finally, in *U.S. v. Nietupski* (C.D.Ill. 1990) 731 F.Supp. 881, the defendant sought to suppress tapes of drug dealing activities surreptitiously made by a coconspirator. The court refused to suppress the recordings and expressly disagreed with the analysis in *Vest*, concluding that the legislators who voted in favor of the Act never intended, in the interest of privacy, to exclude "criminal communications recorded by criminals for criminal purposes." (731 F.Supp. at p. 886.) While this result is contrary to the literal words of the statute, the court reasoned that a result contrary to the literal interpretation is justified when " 'the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters. . . .' " (*Id.*, at p. 884, quoting *Griffin v. Oceanic Contractors, Inc.* (1982) 458 U.S. 564, 571 [73 L.Ed.2d 973, 980, 102 S.Ct. 3245].)

As the above discussion reveals, *Vest, Underhill, Traficant,* and *Nietupski* all involved conversations recorded by either the defendant or a coconspirator. The facts in the instant case are patently distinguishable because the confidential informant was (so far as the record reveals) a third party who was not involved in appellant's criminal venture.

Our analysis of the statute begins with the words of the provision. "It is the duty of a court in construing a federal statute to discover and carry out the intent of Congress. When the intent of Congress is expressed in 'reasonably plain terms,' a court must ordinarily treat that language as conclusive." (*U.S. v. Underhill, supra,* at p. 111, quoting *Griffin, supra,* 458 U.S. at p. 570 [73 L.Ed.2d at p. 980].) "There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are

sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning." (*U.S.* v. *Amer. Trucking Ass'ns.* (1940) 310 U.S. 534, 543 [84 L.Ed. 1345, 1350, 60 S.Ct. 1059], fn. omitted.) ■ The wording of title 18 United States Code section 2515, which bars the use in *any* court of the contents of *any* illegally intercepted wire communication, or *any* evidence derived therefrom, provides no room for an interpretation that would permit the use in this case of the admittedly illegal recordings of appellant's telephone conversations. Furthermore, there is no reason in this case to deviate from the plain meaning of the words Congress chose, as a literal interpretation of the statutory language clearly and directly promotes the privacy interests Congress sought to protect. Accordingly, we conclude that under title III the recorded conversations could not properly be used to support the search warrant herein.

The People argue title 18 United States Code section 2515 should be interpreted consistent with the Fourth Amendment exclusionary rule, which does not apply to evidence obtained by an illegal search and seizure conducted by a private party. They assert such a limitation is in accord with the statute's purpose and the congressional intention not to "press the scope of the suppression [rule] beyond present search and seizure law." (1968 U.S. Code Cong. & Admin. News at p. 2185.) This argument is unavailing. First, permitting the use of the recorded conversations in this case would be directly inconsistent with the statutory objective to guard against invasions to personal privacy, an invasion that is exacerbated every time the intercepted communication is used. Second, as the Attorney General acknowledges, section 2515 was never intended to be co-extensive with the Fourth Amendment exclusionary rule. (*United States* v. *Dorfman* (7th Cir. 1982) 690 F.2d 1217, 1227 [tit. III's suppression provision has "roots in the Fourth Amendment exclusionary rule," but is not co-extensive with that rule].) The Fourth Amendment exclusionary rule is intended to deter future constitutional violations, an objective that would not be furthered by penalizing the police for a private violation. In contrast, suppression under title III is necessary not only to guard against future violations, but also to minimize the invasion of privacy inherent in each reuse of the intercepted material. As the First Circuit has observed, "the fourth amendment exclusionary rule is a judicially-fashioned rule serving different purposes than the congressionally-created rule of section 2515 . . . ." (*U.S.* v. *Vest, supra,* 813 F.2d at p. 481; accord, *United States* v. *Giordano* (1974) 416 U.S. 505, 524 [40 L.Ed.2d 341, 358, 94 S.Ct. 1820] [distinguishing between the "judicially-fashioned exclusionary rule" and the provisions of tit. III].)

In a related argument, the Attorney General emphasizes that the legislative history of the Act provides that in order to compel compliance with the

statute, "the *perpetrator* must be denied the fruits of his unlawful actions in civil and criminal proceedings." (Sen. Rep. No. 1097, 90th Cong., 2d Sess., p. 69 (1968), italics added.) The People rely on this language as support for their claim that title 18 United States Code section 2515 was designed to punish those who defy the law and to deter future violations of the Act, objectives that would not be advanced by denying an innocent party's use of the tape. We cannot accept this interpretation of the congressional intent. As the Supreme Court has acknowledged, "[section] 2515 serves not only to protect the privacy of communications, *but also to ensure that the courts do not become partners to illegal conduct . . . .*" (*Gelbard* v. *United States, supra,* 408 U.S. 41, 51 [33 L.Ed.2d 179, 188-189], italics added, fn. omitted.) Clearly, if the courts are to avoid becoming "partners to illegal conduct," they may not countenance the use of illegally obtained information even when the information is proffered by an innocent party.

The cases cited by the People that have allowed the use of illegally intercepted communications have involved either petty violations of the Act that did not substantially affect congressional objectives,[4] or taped conversations that were recorded by a party to the conversation (and, in some instances, by the defendant himself.)[5] We thus do not find them relevant or persuasive.[6]

## II.

◼ Although we have determined the recorded telephone conversation could not legitimately be used to support issuance of the search warrant in this case, we have concluded the search warrant need not be quashed because even without the objectionable information, the supporting affidavit provided probable cause to search.

---

[4]For example, in *United States* v. *Chavez* (1974) 416 U.S. 562 [40 L.Ed.2d 380, 94 S.Ct. 1849] the court permitted the use of information gathered through the use of a wiretap despite a technical violation of the Act. In that case, the application for the wiretap erroneously indicated the Assistant Attorney General had authorized the intercept, when in fact the Attorney General had done so. The court held suppression was unnecessary because a statutorily eligible person had in fact authorized the wiretap application. (416 U.S. at pp. 579-580 [40 L.Ed.2d at pp. 394-395].)

[5]As we previously have explained, *Underhill, Traficant,* and *Nietupski* are all inapposite, since they involved recordings made by the defendant or a coconspirator. In such circumstances suppression would be inappropriate since it would lead to a result Congress clearly did not intend.

[6]Exceptions to the rule requiring suppression have been recognized where the information is used in prosecutions for violations of the Act (*United States* v. *Liddy* (D.C.Cir. 1973) 354 F.Supp. 217, 221) and for purposes of impeachment (*United States* v. *Grubbs* (5th Cir. 1985) 776 F.2d 1281, 1286; *United States* v. *Winter* (1st Cir. 1981) 663 F.2d 1120, 1154.) Neither of those exceptions applies here.

Appellant argues that, stripped of the recording's information, the affidavit "presents nothing more than an uncorroborated, undetailed tip from an anonymous tipster." We disagree.

 The United States Supreme Court has explained that "[t]he task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." (*Illinois* v. *Gates* (1983) 462 U.S. 213, 238 [76 L.Ed.2d 527, 548, 103 S.Ct. 2317].)

 In this case—wholly apart from the recorded telephone conversation—the informant told the police (1) appellant and Moraga were going to commit a burglary; (2) they were planning to meet at a specific restaurant at a particular time; and (3) the site of the intended burglary was a white house with green trim on Buena Vista Avenue. After receiving this tip the investigating officers went to the described location and found a house fitting the informant's description. While the informant's reliability cannot be established based solely on his knowledge of "easily obtained facts" (see *Illinois* v. *Gates, supra*, 462 U.S. at p. 245 [76 L.Ed.2d at p. 552]; *Alabama* v. *White* (1990) 496 U.S. 325, 332 [110 L.Ed.2d 301, 310, 110 S.Ct. 2412] [distinguishing between informant's knowledge of "easily obtained facts" and accurate predictions of future behavior]), appellant underestimates the value of the single piece of corroborating information that is crucial to this case: i.e., the fact that after the police received the tip the burglary occurred exactly as the informant predicted. As the Supreme Court recognized in *White*, "[w]hat was important was the caller's ability to predict [the accused's] *future behavior*, because it demonstrated inside information—a special familiarity with [the accused's] affairs. . . . Because only a small number of people are generally privy to an individual's [planned activities], it is reasonable for police to believe that a person with access to such information is likely also to have access to reliable information about that individual's illegal activities." (496 U.S at p. 332 [110 L.Ed.2d at p. 310].)

In *Gates*, an anonymous informant advised police of the Gateses' travel plans to Florida and their intent to bring a large supply of drugs back in the trunk of their car. The Supreme Court concluded that once police verified the informant properly had predicted the couple's travel plans, the informant's tip provided probable cause to search their home. (462 U.S. at p. 246 [76 L.Ed.2d at p. 553].) As the Attorney General has noted, the evidence here is even stronger, since the police not only corroborated innocent activity; they determined a burglary had been committed at the home

pinpointed by the caller. We are satisfied that this evidence provided sufficient basis for the magistrate to make the "practical decision" that there was probable cause to issue the warrant without relying on information subject to suppression under title III.

■ Finally, appellant argues the oral tip provided by the informant was "inextricably linked" to the illegal tape, and thus cannot be used to support the search warrant. This claim must fail because the record shows appellant failed to raise this claim below, even when he had the opportunity to do so. At the hearing on the motion to quash the warrant the court and counsel discussed whether, excluding all references to the tape, the affidavit established probable cause. Defense counsel never once questioned whether the tip itself was tainted as being derived from the taped conversation. Having failed to raise this claim in the trial court, appellant is precluded from raising it for the first time on appeal.

In light of our conclusion that after redacting the tainted references to the taped confessions the search warrant still provided probable cause to conduct the search, we do not feel it necessary to inquire whether the good faith exception applies. Because Justice Peterson's concurring opinion is almost entirely devoted to this issue, however, we are constrained to note that at least two federal courts have explicitly refused to apply the good faith exception to allow the use of evidence gathered in violation of title III. (*United States* v. *Orozco* (S.D.Cal. 1986) 630 F.Supp. 1418, 1521-1522; *County of Oakland By Kuhn* v. *City of Detroit* (D.C. Mich. 1984) 610 F.Supp. 364, 369, fn. 10; see also, *United States* v. *Spadaccino* (2d Cir. 1986) 800 F.2d 292, 296 [holding good faith exception inapplicable to Connecticut wiretap law] and *State* v. *Garcia* (Fla. 1989) 547 So.2d 628 [Florida law].) These courts have reasoned that the judicially fashioned good faith exception cannot be grafted onto a congressionally mandated suppression remedy that allows for no such exception without an unwarranted judicial limitation of the power of the legislative branch. Nor do these courts believe anything in *Leon* suggests the Supreme Court would attempt to create an exception to a statutorily imposed suppression rule. (*United States* v. *Orozco, supra,* 630 F.Supp. at p. 1522.) Finally, even indulging the questionable assumption that the good faith exception is even applicable, it is debatable whether an officer who harbors serious doubts about the legality of evidence relied upon in his affidavit but does not reveal those doubts to the magistrate, or at least clearly present the question, can be said to have acted in good faith.

### DISPOSITION

For the foregoing reasons, the judgment is affirmed.

**SMITH, J., Concurring.—** I concur with the reasoning and conclusion of section II of the lead opinion. The warrant can be upheld because the supporting affidavit provides the requisite probable cause quite apart from any references to the illegally obtained tape recording. Therefore, I do not feel it necessary to address the questions contained in section I of the lead opinion.

**PETERSON, J.,\*** Concurring and Dissenting.—I concur in the judgment of affirmance.

A. *The Redacted Affidavit for Search Warrant Established Probable Cause for Its Issuance*

Assuming arguendo, as Justice Kline's lead opinion indicates, that the tape recording was made in violation of title III of the Omnibus Crime Control and Safe Streets Act of 1968 (18 U.S.C.[1] § 2510 et seq.) (hereafter the Act or Title III), after excision of all reference to it from the affidavit for search warrant, the remaining content of that affidavit furnished probable cause for issuance of the warrant and the searches made thereon. The trial court explicitly found that if the references to that tape-recorded conversation were stricken from the affidavit there was, nonetheless, "information [the informant's telephone call] obtained *other than on the tape . . .* that a burglary was going to occur at a certain residence that was described . . . . Six hours later, the burglary occurs. *The burglary is corroboration of the information by the informant."* (Italics added.) This finding, after consideration of the redacted affidavit, fully supports the trial court's order denying appellant's suppression motion based on the remaining averments of the affidavit free of any alleged taint of the tape recording. (*United States* v. *Veillette* (1st Cir. 1985) 778 F.2d 899, 904.) "If lawfully obtained information in a search warrant affidavit supports probable cause for issuance of a warrant, the warrant will be upheld even if additional, illegally obtained, information is also contained in the warrant affidavit." (*People* v. *Angulo* (1988) 199 Cal.App.3d 370, 375 [244 Cal.Rptr. 819].) The lower court's statement above quoted was the functional equivalent of an explicit finding by the trial court that the magistrate would have issued the warrant "even if the [allegedly] illegally obtained [tape-recorded] information had not been included in the affidavit." (*People* v. *Koch* (1989) 209 Cal.App.3d 770, 787-788, fn. 5 [257 Cal.Rptr. 483], analyzing *Murray* v. *United States* (1988) 487 U.S. 533 [101 L.Ed.2d 450, 108 S.Ct. 2529]; *Franks* v. *Delaware* (1978)

---

\*Presiding Justice of the Court of Appeal, First District, Division Five, sitting under assignment by the Chairperson of the Judicial Council.

[1]Unless otherwise indicated, all subsequent statutory references are to the United States Code, title 18.

438 U.S. 154, 156 [57 L.Ed.2d 667, 672, 98 S.Ct. 2674]; *People* v. *Luttenberger* (1990) 50 Cal.3d 1, 10 [265 Cal.Rptr. 690, 784 P.2d 633]; see *People* v. *Torres* (1992) 6 Cal.App.4th 1324, 1334 [8 Cal.Rptr.2d 332] [Per Smith, J., "the observations [in the affidavit] gained [from illegally obtained evidence] mus t be stricken and the affidavit retested for probable cause."].)

### B. *The Affidavit for Search Warrant Clearly Indicated the Home of Appellant's Accomplice Was Lawfully Searched Even if No Warrant Therefor Had Issued*

Officer Welch's affidavit further discloses an independent reason for denial of appellant's suppression motion. The search of the house of Moraga, appellant's accomplice, required no search warrant at all. The affidavit disclosed without dispute that Welch had authoritatively determined Moraga, convicted of a prior burglary, was admitted to probation on November 14, 1988, and was on probation when his house was searched; a condition of his probation was that he submit to search and seizure on demand of a peace officer. As such, the search of Moraga's home, in which the loot from the burglary was seized, was justified without a warrant; and Moraga had no grounds to challenge the validity of the search. (See *People* v. *Fierro* (1991) 1 Cal.4th 173, 217-218 [3 Cal.Rptr.2d 426, 821 P.2d 1302].) Even if that were not so, *appellant* has no standing to object to the search of *Moraga's* home, even though such search revealed evidence which ultimately implicated or aided in the implication of appellant.

Since at least 1978, the federal rule has denied such standing to one seeking exclusion of evidence obtained in violation of the constitutional rights of another. (*Rakas* v. *Illinois* (1978) 439 U.S. 128, 148 [58 L.Ed.2d 387, 404, 99 S.Ct. 421], rehg. den. (1979) 439 U.S. 1122 [59 L.Ed.2d 83, 99 S.Ct. 1035]; *In re Lance W.* (1985) 37 Cal.3d 873, 882 [210 Cal.Rptr. 631, 694 P.2d 744].) In *Lance W.*, our Supreme Court interpreted Proposition 8 as eliminating judicially created *remedies* for violation of the search and seizure provisions of federal or state constitutions by exclusion of evidence thus obtained, "except to the extent that exclusion remains federally compelled." (Pp. 886-887.)

Our decision should simply rest on either or both of these grounds.

I write separately to make it clear that I respectfully disagree with that portion of the lead opinion which unnecessarily discusses the application of Title III[2] to this case and errs in that analysis.

The discussion is unnecessary because both the trial court's ruling on appellant's Penal Code section 995 motion, and the lead opinion moot it. Each determines the sufficiency of the affidavit for search warrant after redacting all references therein to the tape recording.

The lead opinion's discussion is erroneous for two reasons. It ignores and conflicts with applicable federal law, thereby misinterpreting the so-called "plain meaning" of Title III (lead opn., *ante*, p. 1120); and if literally applied, it would wrongly proscribe judicial consideration of the application of the "good faith" exception of *United States* v. *Leon* (1984) 468 U.S. 897 [882 L.Ed.2d 677, 104 S.Ct. 3405] to the fruits of a search warrant if the affidavit therefor discloses a Title III violation by private citizens acting independently of police authorities, an issue the lead opinion disclaims any intention to reach. (Lead opn., *ante*, p. 1118, fn. 1.)[3]

1. *The "[P]lain [M]eaning" the Lead Opinion Ascribes to Section 2515 Is an Oxymoron*

The "plain meaning" the lead opinion ascribes to section 2515—that it bars introduction of offending evidence absolutely, with essentially no exceptions—is shredded by an examination of authority, some of it still in conflict. Literally read, section 2515 precludes the use in *any* court of the

---

[2]Title III was introduced in this case by a very strange means. A deputy attorney general, by an amicus curiae brief filed in the superior court in opposition to appellant's Penal Code section 995 motion, urged the *inapplicability* of section 2515 (the applicability of which had *not* theretofore been asserted) in the erroneous belief that Officer Welch's confidential informant was appellant's *accomplice* in the burglary, an assumption neither directly or inferentially supported by the record nor urged by appellant or the district attorney.

[3]I will assume arguendo, for purposes of my discussion, that the tape recording was illegally obtained by the informant, although the record does not even clearly establish that.

The burden of proving the tape recording of the conversation between Moraga and appellant was made without the permission of either party or both parties thereto, and hence illegally violated the Act (§§ 2510-2520), was indisputedly on appellant. (*Traficant* v. *C.I.R.* (6th Cir. 1989) 884 F.2d 258, 266; accord, *United States* v. *Truglio* (4th Cir. 1984) 731 F.2d 1123, 1131-1132.) It is questionable whether appellant carried this burden on the record before us. Neither appellant nor Moraga so testified, and the evidentiary record is wholly silent on this subject.

As the People pointed out at the hearing on appellant's Penal Code section 995 motion, testimony elicited from Officer Welch on cross-examination at the preliminary hearing concerning what the defense described as his *"understanding* . . . that the tape recording[ ] was made without the consent or knowledge of either [Moraga or appellant]" was "purely [Officer Welch's] assumption . . . . in response to a question by [appellant's counsel]." (Italics added.) Such speculation was based on no evidence at all.

*contents or evidence derived therefrom of any* illegally intercepted wire communication. In at least five different legal circumstances, however, courts applying section 2515 have held that it does not mean what this literal reading would imply. Some relevant authorities are summarized as follows:

### a. *Coconspirator Recordings*

A striking diversity of views exists, between the federal Courts of Appeals for the First and Sixth Circuits, as to whether section 2515 bars admission of recordings illegally made by the coconspirators of an accused.

The First Circuit held that Title III wholly precluded use of a recording made by a conspirator of a conversation with his coconspirator without the latter's knowledge, rationalizing this result by an alleged " 'overriding' " congressional concern to protect privacy by enacting Title III. (*U.S.* v. *Vest* (1st Cir. 1987) 813 F.2d 477, 481 (*Vest I*).)

The Sixth Circuit, conversely, refused suppression of recordings made by a defendant himself or a coconspirator on the ground, inter alia, that Congress had no intent in enacting Title III to shield those committing such unlawful interception "from the consequences of their wrongdoing." (*U.S.* v. *Underhill* (6th Cir. 1987) 813 F.2d 105, 112, cert. den. (1987) 483 U.S. 1022 [97 L.Ed.2d 766, 107 S.Ct. 3268]; accord, *Traficant* v. *C.I.R., supra*, 884 F.2d at p. 266; *U.S.* v. *Nietupski* (C.D.Ill. 1990) 731 F.Supp. 881, 884; *United States* v. *Traficant* (N.D.Ohio 1983) 558 F.Supp. 993, 1002.)

### b. *Impeachment*

Since our Supreme Court decided *People* v. *May* (1988) 44 Cal.3d 309, 315 [243 Cal.Rptr. 369, 748 P.2d 307], it has been clear that illegally obtained evidence can be used to impeach a defendant who testifies contrary to that evidence. A number of federal cases similarly allow the fruits of an illegal interception of a communication to be used for impeachment. (*United States* v. *Grubbs* (5th Cir. 1985) 776 F.2d 1281, 1286; *United States* v. *Winter* (1st Cir. 1981) 663 F.2d 1120, 1154.)

Appellant erroneously claimed that the mere playing of the tape recording to Moraga, after Moraga falsely claimed, following an appropriate *Miranda* warning (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602]), that he acted alone in the burglary, vitiates Moraga's subsequent recantation of that falsehood and his implication of appellant as his accomplice, because the recording was allegedly made in violation of Title III.

While section 2511 literally forbids interception of wire or oral communication by "any person," the suppression provisions of section 2515 preclude the receipt "in evidence" of such communication and evidence derived

therefrom "in any *trial, hearing, or other proceeding* in or before any court . . . ." (Italics added.) A "proceeding" has been generally described as "the form and manner of conducting juridical business before a court or judicial officer. . . ." (Black's Law Dict. (6th ed. 1990) p. 1204, col. 1; see also *Post* v. *United States* (1896) 161 U.S. 583, 587 [40 L.Ed. 816, 817] ["Criminal proceedings cannot be said to be brought or instituted until a formal charge is openly made against the accused . . . ."].)

A police *interrogation* of a possible suspect obviously constitutes neither a trial, hearing, nor proceeding within the meaning of section 2515. At such interrogations, to which both Moraga and appellant consented after being given the warning required by *Miranda,* the taped conversation was not proposed for receipt "in evidence" by anyone; and its use in that interrogation, to which both Moraga and appellant voluntarily submitted, was, thus, not statutorily proscribed by section 2515.

California courts, since the passage of Proposition 8, have allowed the admission for impeachment purposes of a defendant's extrajudicial statements elicited in violation of *Miranda.* (*People* v. *May, supra,* 44 Cal.3d at p. 315.) More importantly, federal courts have routinely allowed the *impeachment* use of illegally seized wiretap conversations. (*United States* v. *Grubbs, supra,* 776 F.2d at p. 1286; *United States* v. *Winter, supra,* 663 F.2d at p. 1154; see also *United States* v. *Liddy* (D.D.C. 1973) 354 F.Supp. 217, 220-221, affd.; *United States* v. *Liddy* (D.C. Cir. 1974) 509 F.2d 428, 446, cert. den. (1975) 420 U.S. 911 [43 L.Ed.2d 661, 95 S.Ct. 1408].)

Thus, even had Moraga been testifying in a "proceeding" under oath, falsely making a claim which such a recording belied, the law is well settled that such recording can be used to confront the witness for impeachment purposes, even if made or obtained in violation of Title III.

The recording was played here by the investigative officer for the same functional purpose, disclosure of a false story told in the course of a legitimate police interrogation to which Moraga voluntarily submitted. No one compelled him to say anything after he heard the recording. No dispute is raised that Moraga was not appropriately advised of his rights under *Miranda.* He then voluntarily implicated appellant. If a concededly illegal tape recording can be used to impeach a witness who has testified under oath, its use a fortiori should clearly be allowed to point up the contradictions in a story told by one being voluntarily interrogated by the police, with full advice of his constitutional rights, in the course of an official criminal investigation.

Put another way, it was *not* the tape recording which implicated appellant here. It was the independent statement of his accomplice delivered *after*

hearing the recording which patently demonstrated the falsity of that accomplice's prior statement, which he then recanted. Appellant himself was not interrogated, following a *Miranda* admonition by the investigating officer, until *after* he had been so implicated by Moraga; and appellant, like Moraga and for the same reasons, was properly interrogated through the use, inter alia, of the taped conversation to demonstrate the falsity of his denial of implication in the underlying burglary. Use of the tape recording in questioning suspects Moraga and appellant, both of whom lied initially in a police interview, after a properly administered *Miranda* warning, did not violate the provisions of Title III.

c. *Recording by One Spouse of Another's Conversation in the Family Home*

*Simpson* v. *Simpson* (5th Cir. 1974) 490 F.2d 803 (cert. den. (1974) 419 U.S. 897 [42 L.Ed.2d 141, 95 S.Ct. 176])[4] refused to suppress such recording, while extensively commenting on the paucity of evidence of congressional intent in passing Title III as to prohibitions of the use of marital conversations intercepted by private persons. " '*The major purpose of title III is to combat organized crime.*' [Citation.]" (490 F.2d at p. 806, italics added; accord, *In re Marriage of Lopp* (1978) 268 Ind. 690 [378 N.E.2d 414, 422]; *Anonymous* v. *Anonymous* (2d Cir. 1977) 558 F.2d 677, 679; *London* v. *London* (S.D.N.Y. 1976) 420 F.Supp. 944, 946.) The Fourth and Sixth Circuit Courts of Appeals, by contrast, have excluded all such recordings. (*Pritchard* v. *Pritchard* (4th Cir. 1984) 732 F.2d 372, 374; *United States* v. *Jones* (6th Cir. 1976) 542 F.2d 661, 670.)

d. *Improper Authorization*

Where recordings are made in violation of Title III's literal requirement of wiretap approval by a specified official of the Department of Justice, suppression is denied. (*United States* v. *Chavez* (1974) 416 U.S. 562, 579-580 [40 L.Ed.2d 380, 394-395, 94 S.Ct. 1849].)

e. *Foreign Government Actions*

Recordings made by a foreign government of conversations, although originating in the United States, are not excludable, despite the literal

---

[4]*Simpson* was criticized by our Supreme Court in *People* v. *Otto* (1992) 2 Cal.4th 1088, 1103-1107 [9 Cal.Rptr.2d 596, 831 P.2d 1178], a case not involving *Leon.* The typed opinion issued by the court in *Otto,* by apparent inadvertence, relied in part on portions of our first decision in this case, regarding issues other than the good faith exception of *Leon,* although we had granted a rehearing herein about eight months previously. The Reporter of Decisions has removed *Otto*'s citation of that authority. (*People* v. *Otto, supra,* 2 Cal.4th at p. 1112.)

provisions of Title III. (*United States* v. *Cotroni* (2d Cir. 1975) 527 F.2d 708, 711.)

It is, thus, initially evident that an examination of the foregoing authorities, and in some cases the clear conflict between circuits regarding the literal meaning and application of section 2515, precludes strict adherence to the lead opinion's general pronouncement that "courts . . . to avoid becoming 'partners to illegal conduct' . . . may not countenance the use of illegally obtained information . . . proffered by an innocent [*sic*] party." (Lead opn., *ante*, p. 1121.)

Courts of the United States *have* countenanced the use of such evidence in a variety of situations, and for good and sufficient reason—a recognition, inter alia, that a major and principal purpose of Congress in enacting Title III was to combat organized crime. (*U.S.* v. *Nietupski, supra*, 731 F.Supp. at p. 884; *United States* v. *Traficant, supra*, 558 F.Supp. at p. 1001; *Simpson* v. *Simpson, supra*, 490 F.2d at p. 806; Sen.Rep. No. 1097, 90th Cong., 2d Sess. (1968), reprinted in 1968 U.S. Code Cong. & Admin. News, at pp. 2153, 2157.)

2. *The Lead Opinion Implicitly Eliminates Application of the Good Faith Exception of Leon to This and Similar Cases, While Disclaiming It Reaches That Issue*

In *Leon*, the federal Supreme Court, while acknowledging the exclusionary rule to be a judicially fashioned remedy safeguarding the rights of citizen's under the Fourth Amendment through its deterrent effect, adopted a "good faith" exception thereto: If police obtain evidence on execution of a defective search warrant, the evidence is nonetheless admissible if the police reliance on the defective warrant was objectively reasonable. "Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." (*United States* v. *Leon, supra*, 468 U.S. at p. 921 [82 L.Ed.2d at p. 697].)

The lead opinion disclaims reaching the issue of the application of *Leon*'s good faith exception in this case. (Lead opn., *ante*, p. 1117, fn. 1.) It seems without exception, however, to require unconditional suppression of *any* evidence connected to or "tainted" by a tape recording made by independent third parties in violation of Title III. Such total and unconditional proscription of all such evidence, as a matter of law, would obviously leave *no* basis for its use, even though police in good faith sought and obtained a search warrant producing such evidence based upon such a tape recording as disclosed to the magistrate issuing the warrant and obtained under the circumstances of this case.

Having implicitly so eliminated judicial consideration of the *Leon* exception, the lead opinion's disclaimer of reaching that issue is meaningless. A commitment to refrain from discussing its future use has never resurrected a dead horse.

As the authorities set forth above demonstrate, the lead opinion's preliminary and sanguine assumption regarding the "plain meaning" of section 2515 is simply nonexistent. The literal meaning of section 2515 is already riddled with judicially fashioned exceptions, on which some federal circuit courts are divided, as examination of the case law demonstrates. It consequently makes no sense to interpret section 2515 as embodying some absolute rule which would be impervious to the judicially fashioned exception announced in *Leon*, a claim sanctioned by no other present authority. This misperception of *Leon*'s nonapplication here, if adopted by this court, would wrongly fuel extensive and unnecessary uncertainty in the law of search and seizure.

The lead opinion seems to support this dicta as follows: A statutory violation of Title III by a private party recording a conversation is one for which Congress has provided a *statutory* suppression remedy which "guard[s] against future violations [of Title III]" and also "minimize[s] the invasion of privacy inherent in each reuse of the intercepted material" (lead opn., *ante*, p. 1120); suppression for *constitutional violations* of evidence under rules judicially fashioned pursuant to the Fourth Amendment is not a remedy coextensive with the statutory remedy of exclusion contained in section 2515; and the statutory remedy of exclusion is the *only one* applicable when an antecedent private violation of Title III is disclosed in a search warrant affidavit.

The implicit and defective corollary of this reasoning is that rules of judicial exclusion under the Fourth Amendment (and the *Leon* "good faith" exception thereto) can *never* be triggered if that affidavit discloses such antecedent private violation of Title III, a *statutory* violation. Suppression must always be ordered because a statutory exclusionary rule is implicated.

The dangerous implications of the lead opinion's blithe and unfortunate analysis are breathtaking. The People, for example, would be absolutely precluded from the use of evidence secured by search warrant in prosecuting conspirators who assassinate a public official or terrorists who blow up an airplane, if the affidavit for that warrant is founded, in whole or in part, on an antecedent communication between such persons intercepted by a third party not part of the conspiracy or plot, who recorded it without the participants' permission or police knowledge or sanction. A magistrate's

issuance of a warrant based wholly or in part on disclosure to him in good faith by affidavit stating such facts would become an irrelevant consideration. A wrongdoing criminal's right of privacy would become absolute when police in good faith sought a warrant on facts disclosing such third party violation of Title III, and recovered incriminating evidence on its execution which the lead opinion would suppress. This seems a most peculiar result, not only because it eviscerates *Leon* but also because it ignores the fact that Title III is generally recognized as legislation enacted to combat organized crime. (*United States* v. *Traficant, supra,* 558 F.Supp. at p. 1001; *U.S.* v. *Ferrara* (D.Mass. 1991) 771 F.Supp. 1266, 1287-1288, 1304.) The lead opinion's analysis simply ignores the nature of the issue raised by appellant's motion to suppress evidence seized under the search warrant. That motion raised the issue of whether *probable cause* existed for issuance of that warrant, a *constitutional* issue implicating a judicial determination of appellant's Fourth Amendment rights.

The lead opinion, however, wrongly confuses two separate issues: (1) whether a tape recording was illegally made by a third party; and (2) whether a search warrant, the issuance and execution of which are measured by Fourth Amendment standards, was supported by probable cause and obtained in good faith.[5]

As to the first issue, if appellant made a motion to suppress the *tape recording* in order to bar *its* use at trial, upon proof it was illegally made, the motion should have been granted under federal statutory law. (See *People* v. *Otto, supra,* 2 Cal.4th at p. 1116.) However, the issue here is not whether the trial court should have suppressed the *tape recording.*

Appellant did make a motion to suppress, which was aimed *only* at physical evidence seized pursuant to a search warrant for a residence, and at appellant's subsequent confession. The issue generated by that motion is simply whether the Fourth Amendment to the federal Constitution requires suppression, i.e., *whether the search warrant issued was supported in good faith by probable cause.* (See *In re Lance W., supra,* 37 Cal.3d at pp. 881-883.) Any private illegality in taping the burglars' conversation was not determinative of the constitutional issue of whether probable cause supported the issuance of a search warrant, if the officer securing that warrant acted in good faith.

In sum, the lead opinion errs in this implicit reasoning: The *statutory violation* of Title III of a private party entirely divorced from police activity,

---

[5]Appellant does not contest the good faith of Officer Welch in preparing the affidavit for, and in obtaining from the magistrate, the search warrant at issue here.

in recording a criminal conversation, has an exclusive statutory remedy under section 2515 requiring suppression when "the communication was unlawfully intercepted." (§ 2518(10)(a)(i).) Application of that exclusively statutory suppression remedy either eliminates the need for determining, or proscribes additional consideration of, whether probable cause nonetheless existed for the warrant's issuance, and the concomitant issue of *Leon*'s good faith exception to suppression for lack thereof. Thus, such unlawfully intercepted communication could *never* wholly or partially be considered or construed as implicating constitutional (Fourth Amendment) issues of probable cause for search warrant issuance, to which the *Leon* good faith exception always and clearly applies, despite its good faith disclosure by the government in seeking such warrant. This analysis ignores the fact that all *statutory* violations, if disclosed in good faith by affidavit for a search warrant, are simply included in the total antecedent factual background on which the ultimate Fourth Amendment question of probable cause for issuance of a search warrant pivots, when that issue is presented by a post search suppression motion.

The Fourth Amendment constrains governmental, not individual action; its object being "to deter illegal *government* activity." (*United States* v. *Goldstein* (9th Cir. 1976) 532 F.2d 1305, 1311, italics in original.) The only issue arising from the search warrant, cognizable in this appeal, was whether the governmental action of police officers in seeking a search warrant was proper, i.e., did they show probable cause for the issuance of the search warrant. (Cf. *United States* v. *Clegg* (5th Cir. 1975) 509 F.2d 605, 610-611; *U.S.* v. *Ferrara, supra*, 771 F.Supp. at p. 1297.) The trial court could have properly considered the affidavit information, including the informant's recording, as the antecedent factual background on which a probable cause finding was made; and in making that finding, the lower court could have properly applied *Leon*'s good faith exception in deciding the Fourth Amendment issue its probable cause determination implicated.

The lead opinion's premise, that Title III provides a statutory remedy of such a degree of finality and exclusivity that it somehow never implicates a constitutional issue, is not the view of the United States Supreme Court. (*United States* v. *Giordano* (1974) 416 U.S. 505, 525 [40 L.Ed.2d 341, 358, 94 S.Ct. 1820].) *Giordano* involved the government's failure to obtain authorization for a wiretap from a party statutorily empowered to give it. Therein, Justice White conceded, inter alia, the correctness of the government's contention that section 2518(10)(a)(i), which provided for suppression of evidence where "the communication was unlawfully intercepted," must be construed to include *both* constitutional violations and statutory violations which result therefrom, acknowledging "[s]uppression for lack of

probable cause" as illustrative of "constitutional violations." (*United States* v. *Giordano, supra,* 416 U.S. at pp. 525-526 [40 L.Ed.2d at pp. 358-359].)

Ten years later, it became clear that a statutory violation implicating Fourth Amendment constitutional rights, where suppression of evidence seized under a search warrant was urged, was subject to a modified analysis. Justice White then authored the opinion in *Leon, supra,* concluding that Fourth Amendment interests are *not* advanced by excluding evidence obtained, as here, by officers acting "in the objectively reasonable belief that their conduct did not violate the Fourth Amendment." (468 U.S. at p. 918 [82 L.Ed.2d at pp. 695-696].)

In sum, the federal Supreme Court recognized in 1974 that Title III implicates both issues of statutory and constitutional violations. In 1984, it adopted the *Leon* good faith rule, which is applicable to Fourth Amendment probable cause issues. The question here of whether suppression of evidence should be ordered for *lack of probable cause* in obtaining a search warrant, because the affidavit for the warrant disclosed that the contents of an informant's tape set forth therein were obtained in violation of Title III, simply presented the constitutional issue of the existence of probable cause for the warrant's issuance on those facts. In deciding that issue, the good faith exception of *Leon* could have been properly applied.

Nothing in *Leon* or any reported case supports the lead opinion's implicit conclusion that, if an antecedent fact to be considered in making a probable cause determination for issuance of a search warrant is a nonpolice third party violation of a statute, Title III or otherwise, suppression is automatically required without any consideration of the good faith and objectively reasonable belief of the officers who obtained the warrant. In fact, after *Leon,* "the contemporary understanding of Congress . . . [is] that the *judicially crafted exclusionary rule* governs conduct which violates *both the Fourth Amendment and the provisions of Title III which implement its requirements."* (*U.S.* v. *Ferrara, supra,* 771 F.Supp. at p. 1304, italics added.)

Justice Kline's implicit proscription against applying *Leon*'s good faith exception under the circumstances of this case is also inconsistent with the recent decision of the Ninth Circuit Court of Appeals in *U.S.* v. *Butz* (9th Cir. 1993) 982 F.2d 1378.) *Butz* found the good faith exception articulated in *Leon* applicable when state police officers unintentionally violated the provisions of Title III by relying upon what they believed were the applicable state law standards for electronic surveillance of telephones by means of pen registers: "The interests of justice are not served by suppression in the present case. When the pen registers were ordered, the state officers acted in

accordance with Idaho law as it then existed. Excluding the evidence would not serve any deterrence effect. In addition, as the district court observed, 'criminal investigations . . . would be imperiled from the outset if law enforcement officers and prosecutors were required to be omniscient and constrained to guess what construction may or may not be placed on a given statute.' " (*U.S.* v. *Butz, supra*, 982 F.2d at p. 1383.) Evidence should not be excluded when based upon a good faith interpretation of state law which is subsequently found to violate federal standards. (*Illinois* v. *Krull* (1987) 480 U.S. 340, 359-360 [94 L.Ed.2d 364, 381, 107 S.Ct. 1160].)

Finally, the lead opinion's rationale is inconsistent with what we (Division Two) have previously said. In *People* v. *MacAvoy* (1984) 162 Cal.App.3d 746, 763 [209 Cal.Rptr. 34], we held (per Kline, P. J.) that the *Leon* good faith exception applied where a search warrant was defective for violation of the statutory requirements of Penal Code section 1525 that the warrant describe "particularly" the place to be searched: "When an officer conducts a search under the authority of a warrant issued by a neutral and detached magistrate, this 'normally' establishes that the law enforcement officer has acted in good faith in conducting the search." (*People* v. *MacAvoy, supra*, 162 Cal.App.3d at p. 763, citing *United States* v. *Leon, supra*, 468 U.S. at p. 922 [82 L.Ed.2d at p. 698].) Even though in 1872 the drafters of the particularity requirement of Penal Code section 1525 obviously could not have known of the *Leon* good faith exception, we held the *statutory* requirement was subject to the *Leon* exception. The same applies here.

No case the lead opinion cites has even held or considered the issue of the *Leon* good faith exception's inapplicability solely because the affidavit for the search warrant stems, in whole or in part, from information furnished by a private third party who, acting independently, acquired it by violating Title III. *Ferrara, supra*, applied *Leon* to a warrant obtained in violation of federal wiretap laws. (771 F.Supp. at pp. 1296-1298.) It is also notable that, having relied on *Vest I* which did not discuss *Leon*, the lead opinion fails to cite the same court's later case of *U.S.* v. *Vest* (1st Cir. 1988) 842 F.2d 1319 (cert. den. (1988) 488 U.S. 965 [102 L.Ed.2d 526, 109 S.Ct. 489]) (*Vest II*). *Vest II* refused a defense request to dismiss an indictment because the *government* presented illegal wiretap evidence to a grand jury in securing the indictment, citing the *Leon* exception. "To penalize the government when it acts in good faith is unlikely to have a deterrent effect on future 'misconduct.' " (*Vest II, supra*, 842 F.2d at p. 1334, citing *United States* v. *Leon, supra*, 468 U.S. at p. 918 [82 L.Ed.2d at p. 695].)

"[A]*ny rule of evidence* that denies the jury access to clearly probative and reliable evidence must bear a heavy burden of justification, and must be

carefully limited to the circumstances in which it will pay its way by deterring official lawlessness." (*Illinois* v. *Gates* (1983) 462 U.S. 213, 257-258 [76 L.Ed.2d. 527, 560-561, 103 S.Ct. 2317] (conc. opn. of White, J.) italics added.)

Were it necessary to decide this case on grounds implicating the *Leon* good faith exception, I would adhere to the view we unanimously adopted before granting rehearing in this case, that the exception clearly applies.[6]

A petition for a rehearing was denied April 27, 1993, and appellant's petition for review by the Supreme Court was denied July 22, 1993.

---

[6]"Under these circumstances, we conclude [the officer] acted reasonably when he took this affidavit [containing information given by a confidential informant] to a judicial officer for determination. His subsequent reliance on the warrant that was issued was thus objectively reasonable under *Leon*, and suppression of the evidence is not required." (*People* v. *Camarella* (1991) 54 Cal.3d 592, 607 [286 Cal.Rptr. 780, 818 P.2d 63]; accord, *Bay* v. *Superior Court* (1992) 7 Cal.App.4th 1022, 1031 [9 Cal.Rptr.2d 339] ["It is only unreasonable police conduct that is sanctioned by the exclusionary rule. We find the good faith exception of *Leon* applicable in the instant case and, therefore, conclude the motion to suppress was properly denied."].)

Tested under the *Leon* standards, the private party's action would not justify exclusion of the seized evidence when police obtained the warrant in the good faith belief that it was legal to rely on evidence gathered by a private party. No Fourth Amendment principles are thereby offended. (*Vest II, supra*, 842 F.2d at pp. 1334-1335; see also *U.S.* v. *Malekzadeh* (11th Cir. 1988) 855 F.2d 1492, 1496-1497, cert. den. (1989) 489 U.S. 1029 [103 L.Ed.2d. 221, 109 S.Ct. 1163] [The *Leon* exception applied to a warrant issued under the federal wiretapping laws.].)

The lead opinion's scattered authorities to the contrary are not persuasive. It cites two isolated federal district court opinions which indicated, on very different facts, that *Leon* might not apply to certain violations of the federal Act. (*United States* v. *Orozco* (S.D.Cal. 1986) 630 F.Supp. 1418, 1521-1522; *County of Oakland by Kuhn* v. *City of Detroit* (E.D.Mich. 1984) 610 F.Supp. 364, 369, fn. 10.) However, no appellate court has ever followed these early indications, or held that a good faith exception should not apply to claimed violations of the Act. The lead opinion's other authorities do not even deal with the federal Act at all. In *State* v. *Garcia* (Fla. 1989) 547 So.2d 628, 630, the state court dealt with a state statute which had been drafted so as to exclude a *Leon* exception. In *United States* v. *Spadaccino* (2d Cir. 1986) 800 F.2d 292, 296-297, the Second Circuit initially questioned in dicta whether certain evidence should have been admissible, because a state statute requiring notice was not complied with; and the court indicated a *Leon* exception would not apply because the state law had previously been interpreted by the state courts as requiring strict compliance with the notice requirement. The Second Circuit found the evidence properly admissible, in any event, because there had been no case law on point and because the police officers "conducted the search in good faith." (*United States* v. *Spadaccino, supra*, 800 F.2d at p. 297.) These authorities, in sum, certainly do not impair the conclusions reached in the authorities cited in the first two paragraphs of this footnote.