**UNITED STATES of America,**

**v.**

**George Gordon LIDDY et al.**

**Crim. No. 1827–72.**

United States District Court,
District of Columbia.

Jan. 5, 1973.

See also, D.C., 354 F.Supp. 208.

Earl J. Silbert, Donald E. Campbell, Asst. U. S. Attys., for United States.

Peter L. Maroulis, Poughkeepsie, N.Y., Thomas A. Kennelly, Washington, D.C., for defendant Liddy.

William O. Bittman and Austin S. Mittler, Hogan & Hartson, Washington, D.C., for defendant Hunt.

Gerald Alch, Boston, Mass., Bernard Shankman, Washington, D.C., for defendant McCord.

Henry B. Rothblatt, Washington, D.C., Betty Thompson, Arlington, Va., Donald E. Cope, Washington D.C., for defendants Barker, Martinez, Sturgis & Gonzalez.

Charles Morgan, Jr., Washington, D.C., for movants Robert E. B. Allen, individually and as President of the Young Democratic Clubs of America and Director of Youth Activities for the Democratic National Committee, and others.

SIRICA, Chief Judge.

## OPINION

### I.

The motion at bar is made on behalf of five persons as individuals and as class representatives. They claim to represent the class of all persons whose telephone conversations, on telephones in the Democratic National Committee headquarters, were illegally intercepted by one Alfred C. Baldwin and others. They allege that conversations were intercepted, that the interception was unlawful, and that they have standing as "aggrieved persons" to block disclosure of any intercepted communications. What they seek, in simple words, is the suppression and/or destruction of anything relating to the intercepted communications: records or logs, tapes, memoranda, reports, statements by persons who overheard the conversations, etc. Specifically the relief sought is as follows:

1. suppression in the "Watergate" trial, of any evidence or information which reveals the contents of the communications, allegedly intercepted in-

cluding the identity of parties to such communications.

2. issuance of an order to all parties in the "Watergate" case, the Department of Justice, the FBI, and certain other named persons prohibiting them from disclosing the contents of intercepted communications and also prohibiting them from requiring the Movants or anyone else to disclose such information.

3. the quashing of subpoenas which require Movants or members of their class to appear and testify in the "Watergate" trial. In the alternative, it is requested that an order be entered protecting Movants from questioning with regard to the contents of intercepted communications.

4. issuance of an order directing certain named organizations and persons to appear and state under oath whether or not they have in their possession or control any contents or "indicia of contents" (memoranda, notes, transcriptions, etc.) of intercepted communications. They are to name anyone else who, according to their knowledge, has such information. Any contents or "indicia of contents" are to be delivered to the Court for destruction.

For the purposes of this ruling, the Court has assumed that the Movants have standing to make their claims. They purport to have standing as "aggrieved persons," citing the provisions of 18 U.S.C. §§ 2510(11) and 2518(10) (a). The Court is not wholly convinced that the sections noted sustain the Movants' claim,[1] but nevertheless passes to the merits.

## II.

The Court understands Movants' argument to assert (1) that there is no need for disclosure, in this trial, of the contents of conversations allegedly intercepted, and (2) that in any case, the disclosure of such contents for whatever purpose is statutorily and constitutionally prohibited. The word "contents" is here used as it is defined in 18 U.S.C. § 2510(8).

■ Regarding the first claim, the Court is satisfied that the United States has adequately demonstrated the need for disclosure at trial and described the uses to be made of such disclosures. Count one of the indictment herein, the conspiracy count, alleges illegal interception of oral and wire communications from the offices and headquarters of the Democratic National Committee in furtherance of the conspiracy. In addition, count eight alleges specifically the unlawful interception of wire communications received by and sent from

1. § 2510(11) defines the term "aggrieved person" as "a person who was a party to any intercepted wire or oral communication or a person against whom the interception is directed." § 2518(10) (a) states:

Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that—

(i) the communication was unlawfully intercepted;

(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or

(iii) the interception was not made in conformity with the order of authorization or approval.

It seems to me that this section is not applicable. § 2518, which is rather lengthy, appears to be concerned only with court authorization of government wiretaps. It is titled, "Procedure for interception of wire or oral communications." Subsection (10) deals with suppression of the contents of communications intercepted illegally by the government. The interception might be illegal for any of three reasons: (i) the government did not get judicial approval, (ii) the order authorizing the government to tap was defective, or (iii) the government did not follow the provisions of the court's authorizing order. The section treats the subject of wiretap authorizations, not the matter of tapping or bugging by private individuals which is always illegal.

telephones used primarily by Robert Spencer Oliver and Ida M. Wells, two of the movants, in violation of 18 U.S.C. § 2511. It appears obvious to the Court that in proving such offenses, the prosecution will need to introduce evidence identifying parties to intercepted communications and the topic or substance of such communications. Evidence of this sort may also be necessary in attempting to show the motives or intent behind the unlawful conduct alleged. The need for disclosure, to this extent, of the contents of any intercepted conversations cannot seriously be disputed.

Movants' second contention asserting what might be termed a right to prevent disclosure, relies principally on §§ 2511(1)(c) and (d) and § 2515 of Title 18 U.S.C.[2]

Of the cases cited to support Movants' interpretation of these sections only one appears to the Court to be at all helpful. That is the recent Supreme Court decision in Gelbard v. United States, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972). That case actually comprised two cases from different Circuits. One from the Ninth Circuit involved two persons, Gelbard and Parnas, whose telephone conversations with alleged bookmakers were intercepted by the government. Gelbard and Parnas were later called to testify before a grand jury investigating the bookmakers. They refused to answer questions based on their intercepted conversations. When threatened with contempt, they interposed as a defense the provisions of 18 U.S.C. § 2515.

In the other case, two persons, Egan and Walsh, were called before a grand jury and offered immunity in exchange for their testimony relative to the alleged plot to kidnap Henry Kissinger. They refused to answer questions based on information which the government had obtained from its wiretapping and electronic surveillance of Egan and Walsh. They also cited § 2515.

In rendering its decision, the Supreme Court assumed that the testimony sought by the grand jury would be within the meaning of "evidence derived" from the intercepted communications as that term is used in § 2515. The Court also assumed that the government interceptions were illegal. At p. 47, 92 S.Ct. at p. 2360 the Court states "In short, we proceed on the premise that § 2515 prohibits the presentation to grand juries of the compelled testimony of these witnesses." The Court spent the remainder of the opinion discussing whether § 2515 could be used as a defense to contempt charges and concluded that it could.

Thus, the Supreme Court in *Gelbard* disposed of the type of issue which faces us by means of assumptions and without discussion. It assumed that § 2515 prohibited the disclosure of information demanded from the witnesses. Here we have to decide the question. In addition, we cannot even assume that unlawful interception occurred. That is to be decided by the jury at trial. It should also be remembered that *Gelbard* deals

---

2. Section 2511(1)(c) and (d) reads:
    (1) Except as otherwise specifically provided in this chapter any person who—

    .    .    .    .    .

    (c) willfully discloses, or endeavors to disclose, to any other person the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this subsection; or
    (d) willfully uses, or endeavors to use, the contents of any wire or oral communication, knowing or having

reason to know that the information was obtained through the interception of a wire or oral communication in violation of this subsection;
shall be fined not more than $10,000 or imprisoned not more than five years, or both.
Section 2515 states in relevant part:
    Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial . . . if the disclosure of that information would be in violation of this chapter.

with illegal interception by the government. Can § 2515 apply in the same way where the communications were intercepted not by the government, but by private individuals, and any disclosure will come as a result of a government prosecution of those individuals?

If Movants are right and absolutely no disclosure can be permitted, we have the following paradox: Persons who have allegedly violated the statute by intercepting communications cannot be prosecuted because the same statute prohibits the government from disclosing evidence of the unlawful interception.

The Court cannot believe that Congress intended Title III of the Omnibus Crime Control and Safe Streets Act of 1968 to be self-emasculating. This view is reinforced by language in the Senate Report on the Act which has been cited by the Government. Discussing where and when the use and disclosure of intercepted communications might properly be authorized, the report states:

> Neither paragraphs (1) nor (2) [of § 2517] are limited to evidence intercepted in accordance with the provisions of the proposed chapter, since in certain limited situations disclosure and use of illegally intercepted communications would be appropriate to the proper performance of the officers' duties. For example, such use and disclosure would be necessary in the investigation and prosecution of an illegal wiretapper himself. (See United States v. Gris, 146 F.Supp. 293 (S.D.N.Y.1956) aff'd, 247 F.2d 860 (2nd Cir. 1957)).

Senate Report No. 1097, 90th Cong. 2nd Sess. at 99 and 100.

■ Movants also assert a constitutional basis for their claim of a right to prohibit disclosure. The cases cited with respect to rights of privacy, free speech, and association under the First, Fourth and Ninth Amendments, however, bear little relation to the sort of fact situation here presented. It is sufficient to note, as argued by the Government, that the right of individuals to privacy must yield in some degree to the public interest in prosecuting criminal conduct. The victim of a rape, for example, has suffered perhaps the most brutal and humiliating invasion of privacy possible yet she can be required to testify in the prosecution of her assailant and to divulge a full account of the crime. The limited disclosure of communications required to prosecute this case can only be characterized as a lesser invasion of privacy.

## III.

■ Insofar as the relief requested seeks suppression of the contents of intercepted communications, protective orders against questioning with respect to such contents, or the quashing of subpoenas, the Court finds that Movants are not entitled to such relief. As regards the request for orders prohibiting disclosure by persons outside the context of the "Watergate" trial, the Court points out, and counsel for Movants has noted, that Movants may look to Chapter 119 of Title 18, particularly § 2520,[3] for protection. There is no need for issuance of a protective order by this Court.

---

3. Section 2520. Recovery of civil damages authorized

Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications, and (2) be entitled to recover from any such person—

(a) actual damages but not less than liquidated damages computed at the rate

of $100 a day for each day of violation or $1,000, whichever is higher;
(b) punitive damages; and
(c) a reasonable attorney's fee and other litigation costs reasonably incurred.

A good faith reliance on a court order or on the provisions of section 2518(7) of this chapter shall constitute a complete defense to any civil or criminal action brought under this chapter.