**UNITED STATES of America,
Plaintiff,**

v.

**David GRICE, Defendant.**

**Ex Parte: Robert J. Quattlebaum,
Intervenor.**

**No. Crim. 3:98–759–19.**

United States District Court,
D. South Carolina,
Columbia Division.

Nov. 12, 1998.

Robert C. Jendron, Jr., Assistant United States Attorney, of Columbia, South Carolina, for plaintiff.

Kenneth M. Mathews, of Columbia, South Carolina, for defendant.

Joseph M. Mcculloch, Jr., of Columbia, South Carolina, for intervenor.

## MEMORANDUM OPINION

SHEDD, District Judge.

The Court enters this Memorandum Opinion to further explain the basis for its November 9, 1998, oral ruling that suppressed evidence in this criminal action.

### I

The United States of America has indicted David Grice on four counts of illegally intercepting and disclosing oral communications.[1] These counts stem from Grice's alleged videotaping of conversations between two attorneys and their clients while he was employed by the Lexington County Sheriff's Department. One of the videotapes that Grice allegedly made ("the Quattlebaum videotape") records a conversation between Robert J. Quattlebaum and his attorney, Jack Duncan, which occurred in the Lexington County Sheriff's office while Quattlebaum was under investigation for murder.[2] Because the United States intended to use the Quattlebaum videotape at Grice's trial. Quattlebaum moved to intervene and to suppress it under the exclusionary rule codified at 18 U.S.C. § 2515.[3] The United States opposed the motion, arguing that because it has a prosecutorial need for the Quattlebaum videotape, it has the right to use it as evidence regardless of whether Quattlebaum and Duncan object.

The Court conducted oral argument on this motion on November 6, 1998. As of that date, Quattlebaum was willing to consent to have the videotape used at Grice's trial, but only in a closed courtroom.[4] After the Court raised the issue of how Quattlebaum's position may affect his attorney-client privilege. Quattlebaum's attorneys indicated that they needed to discuss the matter with him. The Court offered the parties an opportunity at that time to conduct a pretrial evidentiary hearing to establish whether the Quattlebaum videotape falls within the § 2515 exclusionary, rule—*i.e.*, whether it was illegally made. Such a hearing also would have shed light on the inextricably related issue of whether the Quattlebaum/Duncan conversation is indeed privileged.[5] The parties declined this opportunity.

---

1. *See* 18 U.S.C. §§ 2511(1)(a) and (1)(c).

2. Quattlebaum was eventually tried and convicted for two murders, and was sentenced to death. His case is now on appeal to the Supreme Court of South Carolina. The Quattlebaum videotape, which was not admitted into evidence at Quattlebaum's trial, is the subject of *State–Record Co. v. State*, 332 S.C. 346, 504 S.E.2d 592 (1998) (upholding order of prior restraint).

3. Intervention is permissible under 18 U.S.C. § 2518(10)(a). Although Duncan did not formally move for intervention or suppression, he informed the Court that he also objects to the showing of the videotape at Grice's trial.

4. In *United States v. Bragan*, 499 F.2d 1376, 1380 (4th Cir.1974), the court indicated that the § 2515 exclusionary rule does not apply when the wiretapping victim consents to the use of the evidence.

5. *Cf. State–Record Co.*, 504 S.E.2d at 593 ("It is undisputed that the conversation is in fact a privileged, attorney-client communication").

Because Quattlebaum's attorneys needed to communicate with him as to whether he would consent to the United States' use of the videotape, the Court withheld a ruling on Quattlebaum's motion until November 9, the scheduled trial date. At a pretrial hearing on that date, Quattlebaum's attorney's stated unequivocally that he did not *consent* to the use of the videotape in any manner at Grice's trial.[6] Without the consent of Quattlebaum and Duncan, the Court orally ruled that the videotape would be suppressed. Following the Court's ruling, the United States informed the Court that it intended to immediately appeal, *see* 18 U.S.C. § 3731, and Grice moved for a severance and immediate trial of Count four.[7] The Court denied the severance motion, accepted the United States' statement of intention to appeal, and dismissed the jury.

## II

Section 2515 provides (in pertinent part) that "[w]henever any ... oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial ... in or before any court ... of the United States ... if the disclosure of that information would be in violation of this chapter." The language of § 2515 is plain and unambiguous, and the United States concedes that a literal application of the statute compels suppression of the Quattlebaum videotape. Although it offers no controlling precedent to the contrary, the United States contends that certain legislative history supports its position that it may use the Quattlebaum videotape as evidence to prosecute Grice.[8] In essence, the United States argues that although Congress did not specify an exception to the § 2515 exclusionary rule for the prosecution of an alleged wiretapper, the Court should read such an exception into the statute. The Court declines the United States' invitation to ignore the plain terms of § 2515 and rewrite the statute in this manner.

Though courts state many rules relating to statutory interpretation (and sometimes apply those rules in a contradictory, seemingly outcome-determinative manner), the most appropriate rule for a federal court

---

The United States' case against Grice rests on the assumption that the conversation was privileged and, therefore, illegally recorded. While that assumption is unchallenged at this stage of the proceedings, the Court has made no determination in that regard, as that is an ultimate issue for the factfinder.

6. Notwithstanding his *lack of consent*, it appears that Quattlebaum still desires for Grice to be prosecuted. Quattlebaum's attorney sent a letter—dated November 6, 1998—to the Attorney General of South Carolina (with a copy to the Court), requesting that in the event that Quattlebaum is retried, the State agree not to deem his consent to the United States' use of the videotape in this case as a waiver of attorney-client privilege. The letter states (in pertinent part): "Mr. Quattlebaum does not wish to waive his attorney-client privilege, but does desire the prosecution go forward with whatever evidence is needed to ensure that *even police* are prosecuted, [sic] when they violate the law" (emphasis in original).

7. Count 4 involves a separate videotape unrelated to Quattlebaum and Duncan. The United States has represented that the persons on that videotape consent to its use at trial, but that it needs the Quattlebaum videotape to bolster its proof on Count 4. There has been no objection to the United States' planned use of the other videotape.

8. The United States has cited three cases, none of which the Court finds persuasive. *See United States v. Vest*, 813 F.2d 477 (1st Cir.1987); *United States v. Underhill*, 813 F.2d 105 (6th Cir.1987); *United States v. Liddy*, 354 F.Supp. 217 (D.D.C.), *rev'd*, No. 73–1020 (D.C.Cir. Jan. 19, 1973) (unpublished). Recently, the circuit court of appeals for the District of Columbia was asked to clarify the scope of its January 19, 1973, order in the *Liddy* case. *See* 136 F.3d 828 (D.C.Cir.1998) (per curiam). That court declined to clarify its order, noting that it suppressed evidence only in Liddy's criminal trial. That court did state, however, that it was "in no way suggest[ing] that disclosure of the matters in question ... would be permissible under the terms of 18 U.S.C. §§ 2511 and 2515...." 136 F.3d at 829.

to follow is to apply the law as Congress has expressed it in legislation.[9] As the Fourth Circuit has explained:

> When confronted with a question of statutory interpretation, our inquiry begins with an examination of the language used in the statute. If the statutory language is clear and unambiguous, our inquiry ends there as well; we neither resort to an examination of the statute's legislative history nor apply the traditional rules of statutory construction.[10]

Thus, "[t]he plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result that is demonstrably at odds with the intentions of its drafters.'"[11]

As conceded by the United States, the plain meaning of § 2515 requires suppression of the Quattlebaum videotape. While the United States presents a seemingly rational reason why it should be entitled to use the Quattlebaum videotape at trial—*i.e.*, to bolster the prosecution against Grice, the alleged wrongdoer—exclusion of the Quattlebaum videotape is not a result that is "demonstrably at odds with the intention" of Congress. To the contrary, exclusion of the Quattlebaum videotape actually furthers one of the primary congressional purposes underlying § 2515: protecting privacy rights in private communications. As the Supreme Court has noted: "Section 2515 is ... central to the legislative scheme. Its importance as a protection for 'the victim of an unlawful invasion of privacy' could not be more clear."[12]

■ Adhering to the congressional intent to protect privacy is especially important in this case because the United States, over the objection of Duncan and Quattlebaum, seeks to present to the jury a videotape of one of the most private communications recognized in this country: a privileged attorney-client conversation. The attorney-client privilege "affords all communications between an attorney and client absolute and complete protection from disclosure."[13] The United States' position as to the use of the Quattlebaum videotape contravenes the protection afforded to such communications and poten-

---

9. The Court concurs with Justice Scalia's observations concerning the use of legislative history:

> The law *is* what the law *says*, and we should content ourselves with reading it rather than psychoanalyzing those who enacted it.... Our opinions using legislative history are often curiously casual, sometimes even careless, in their analysis of what "intent" the legislative history shows. Perhaps that is because legislative history is in any event a make-weight; the Court really makes up its mind on the basis of other factors. Or perhaps it is simply hard to maintain a rigorously analytical attitude, when the point of departure for the inquiry is the fairyland in which legislative history reflects what was in "the Congress's mind."

*Bank One Chicago, N.A. v. Midwest Bank & Trust Co.*, 516 U.S. 264, 279–81, 116 S.Ct. 637, 133 L.Ed.2d 635 (1996) (Scalia, J. concurring) (citation omitted & emphasis in original).

10. *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 653 (4th Cir.1996), *cert. denied*, 519 U.S. 1077, 117 S.Ct. 738, 136 L.Ed.2d 677 (1997) (citations omitted).

11. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (citation omitted).

12. *Gelbard v. United States*, 408 U.S. 41, 50, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972). While the *Gelbard* court looked to the legislative history as part of its analysis, it noted that the "unequivocal language of § 2515 expresses the fundamental policy adopted by Congress on the subject of wiretapping and electronic surveillance." 408 U.S. at 47, 92 S.Ct. 2357.

13. *In re Allen*, 106 F.3d 582, 600 (4th Cir. 1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 689, 139 L.Ed.2d 635 (1998). The Supreme Court recently rejected an attempt by the United States to create an exception to the attorney-client privilege which would allow for posthumous disclosure of privileged communications in criminal cases. *See Swidler & Berlin v. United States*, 524 U.S. 399, 118 S.Ct. 2081, 2087, 141 L.Ed.2d 379 (1998). That decision demonstrates an apt principle—that is, no matter how great prosecutorial need for privileged information may be, the privilege still prevails.

tially places Quattlebaum at risk. Depending on the outcome of his appeal (and/or post-conviction review proceedings), Quattlebaum may gain a new trial. Disclosure of the Quattlebaum videotape. even in a closed courtroom setting, may prejudice Quattlebaum's right to a fair retrial.[14]

Although not directly on point, *Bragan* supports the Court's conclusion. In that case, the defendant contended on appeal from his wiretapping conviction that the admission of a wiretapped conversation violated § 2515. The Fourth Circuit rejected this contention, noting that § 2515 was inapplicable because the wiretapped "victims consented to the introduction into evidence of their wiretapped conversation...."[15] The Fourth Circuit's reliance on the victims' consent as a basis for admission of the evidence illustrates the fact that § 2515 exists in large measure to protect privacy rights.[16] Moreover, it undercuts the United States' contention that there is an overriding prosecutorial exception to the exclusionary rule because the existence of such an exception would have made the victims' consent irrelevant.

The Court recognizes that the alleged wrongdoer (Grice) is a primary beneficiary of this decision. While this result may seem curious to some,[17] that is a matter for Congress and not the Court to address. "Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement."[18]

## III

"Proof of the contents of intercepted ... communications is not required to prove the charges for which [Grice] is on trial."[19] While conceding that it *could* prosecute Grice without the Quattlebaum videotape, the United States—being apparently reluctant to pit the testimony of Grice (a law enforcement officer) against Quattlebaum (a convicted double murderer) without the Quattlebaum videotape—has decided that it cannot effectively prosecute him on any of the four counts based on the Court's ruling. That is purely a prosecutorial decision that is based on the United States' perception of its case rather than on a principle of law. However, the United States is entitled to make that decision and to pursue a pretrial appeal of this ruling. Until this matter is resolved (by appeal or otherwise), this case will be held in abeyance.

## IV

Based on the foregoing, the Court, on the 9th day of November, 1998, at Columbia, South Carolina, **GRANTED** the motion and **SUPPRESSED** the Quattlebaum videotape.[20]

---

**14.** *See State-Record Co.*, 504 S.E.2d at 597 ("Once disclosed, although other measures might have alleviated the prejudice to Quattlebaum, his right to a fair trial could not have been guaranteed").

**15.** 499 F.2d at 1380.

**16.** The United States' position renders the statutory, right of intervention, which is designed for victims to preserve their privacy rights, meaningless in criminal cases.

**17.** More curious is the contrast between the United States' position concerning privacy here and its position that the Driver's Privacy Protection Act of 1994 was constitutionally enacted pursuant to the Fourteenth Amendment because it protects privacy interests in items found in state motor vehicle records (*e.g.*, phone numbers, addresses, license numbers). *See Condon v. Reno*, 972 F.Supp. 977 (D.S.C.1997) (declaring the act unconstitutional), *aff'd*, 155 F.3d 453 (4th Cir.1998). Any privacy interest that may exist in those items is certainly less compelling than a privileged conversation between an attorney and client.

**18.** *Badaracco v. Commissioner*, 464 U.S. 386, 398, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984).

**19.** *Liddy*, January 19, 1973, Order, at 1.

**20.** The suppression of the Quattlebaum videotape creates the possibility of the order being

unsupported on the United States' appeal. Quattlebaum has indicated a desire to have Grice prosecuted; he simply does not consent to the use of the videotape. Moreover, Grice—who has indicated that he may seek to introduce the Quattlebaum videotape into evidence—appears not to have standing to object to its introduction. *See Bragan,* 499 F.2d at

1380. For these reasons, the Court believes that this is an appropriate case for the Fourth Circuit to appoint an amicus curiae to argue in support of the suppression order. *See, e.g., United States v. Brainer,* 691 F.2d 691, 692 & n. 5 (4th Cir.1982) (appointment of amicus where parties on appeal both argued against district court order).